1 | Mamta Ahluwalia (Bar No. 245992)
**HKM EMPLOYMENT ATTORNEYS LLP**
2 | 453 S. Spring Street, Suite 1008
Los Angeles, California 90013
3 | Tel/Fax: 213.259.9950
Email: mahluwalia@hkm.com
4 |

5 | Barbara E. Figari (Bar No. 251942)
**THE FIGARI LAW FIRM**
6 | 9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
7 | Telephone:   626.486.2620
Facsimile:   877.459.3540
8 | Email:       barbara@figarilaw.com
9 |

10 | Attorneys for Plaintiff
Alice Vysata
11 |

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14 |

15 | ALICE VYSATA,

16 |                    Plaintiff,

17 |        v.

18 |

19 | MARC MENOWITZ, An Individual; and
APARTMENT RENTAL ASSISTANCE II,
20 | INC. dba APARTMENT CORP.

21 |                    Defendants.

CASE NO.:  18-cv-06157-JAK-RAO

**DECLARATION OF COUNSEL BARBARA E. FIGARI IN SUPPORT OF PLAINTIFF ALICE VYSATA'S MOTION FOR SANCTIONS**

**[Filed Concurrently with Plaintiff's Notice of Motion and Memorandum of Points and Authorities]**

Hearing Date:  January 2, 2019
Time:              10:00 a.m.
Ctrm:              590

---

1

I, Barbara E. Figari, declare as follows:

1. I make this Declaration of my own personal knowledge, except where stated upon information and belief, and if called as a witness, I would and could testify competently to the matters stated herein.

2. I am an attorney admitted to practice in the State of California and am a member of the Bar of the State of California having been admitted in 2007. I am admitted to practice before this Court, as well as the Southern, Eastern and Central District Courts in California, the Ninth Circuit Court of Appeals, and the United States Supreme Court. I am one of the attorneys of record for the Plaintiff in this matter, Alice Vysata.

3. Attached hereto as **Exhibit 1** is a true and correct copy of the Transcript of Proceedings from the November 19, 2018 proceedings in Palm Beach County Circuit Court.

4. Defendants' counsel did not have my permission to file a joint report, using the caption from myself and my co-counsel's office. Defendants' counsel did not have permission to file a joint report containing my signature.

5. Pursuant to Local Rule 7-3, a meet and confer telephone call was held among counsel on December 5, 2018. This phone call lasted 35 minutes. Thereafter, Plaintiff's counsel responded to Defendant's counsel's email messages regarding the same.

6. I have spent 3.1 hours drafting this motion, 35 minutes on a meet and confer phone call with Defendant's counsel, and 21 minutes on the November 9 phone call with Defendant's counsel and this Court. That time does not include time spent discussing these matters with co-counsel, meeting and conferring with Defendants' counsel as to the underlying reports or issues, or any future briefing or appearances as to this motion.

1    I declare, under penalty of perjury under the laws of the State of California, that the

2    foregoing is true and correct.  Signed this 24th day of January 2019 at Rancho Cucamonga,

3    California.

4

5                                          /s/ Barbara E. Figari

6                                          Barbara E. Figari

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF ALICE VYSATA'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEFENDANTS'
COUNSEL KENNETH CHASE

Page 1

1   IN THE CIRCUIT COURT OF THE 15TH

2   JUDICIAL CIRCUIT IN AND FOR

3   PALM BEACH COUNTY, FLORIDA

4   CASE NO. 50 2015 CC 008029 XXXX MB

5

6   APARTMENT RENTAL ASSOCIATES,

7            Plaintiff,

8   vs.

9   ALICE VYSATA,

10           Defendant.

11   - - - - - - - - - - - - - - - - - - - - - - - - - -X

12

13

14

15                        HEARING BEFORE THE
                          HONORABLE JAMES NUTT

16

17   DATE TAKEN:          NOVEMBER 19, 2018

18   TIME:               1:30 P.M.  -  2:50 P.M.

19   PLACE:              PALM BEACH COUNTY COURTHOUSE
                         205 NORTH DIXIE HIGHWAY

20                       WEST PALM BEACH, FL 33401

21

22

23

24   REPORTED BY:        RICK WHITE, C.S.R., F.C.R.
                         and NOTARY PUBLIC

25

Page 2

```
 1                    APPEARANCES:
 2    On behalf of the Plaintiff
 3    CHASE LAW, LLC
      1509 16th Street NW Suite 500
 4    Washington, DC 20036
      By:  Kenneth Chase, Esq.
 5    kchase@chaselaw.com
 6
 7    On behalf of the Defendant
 8    SCOTT WAGNER and ASSOCIATES, P.A.
      250 S. Central Boulevard, Suite 104
 9    Jupiter, Florida 33458
      By: Allison Duffie, Esq.
10    aduffie@scottwagnerlaw.com (live.)
11    -  and  -
12    Daniel Kalish, Esq.
13    (via telephone.)
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                   -- P R O C E E D I N G S --
2              THE BAILIFF:  All rise.  Court is now in
3         session, the Honorable James Nutt now presiding.
4              THE COURT:  We have counsel on the phone.
5              MR. KALISH:  Your Honor, this is Dan Kalish
6         representing Alice Vysata.
7              THE COURT:  All right.  Who do we have
8         here?  Let's take all appearances.
9              MR. CHASE:  Good afternoon, Kenneth Chase
10        for the plaintiffs, Apartment Rental Assistance,
11        Incorporated and Mark Manowitz.  With me today is
12        Zack Slinker from my office.
13             THE COURT:  Great.
14             MS. DUFFIE:  Allison Duffie from Scott
15        Walker and Associates and we are local counsel for
16        Alice Vysata.
17             THE COURT:  I kept getting memos about
18        referral.  You can stand, sit down, whatever you
19        feel like.  Where do we stand with all this?  This
20        is just a boat load of stuff, not to use technical
21        terms or anything, but the stuff that you guys gave
22        me, I couldn't figure out or organize it.
23             I have never had this happen in any of
24        these cases.  What I need is a list of what motions
25        were outstanding or resolved or just the issues.  A
```

                                                      Page 4

1          lot of this stuff went back and forth.  I tried to

2          make sense of it all.  So the one thing that I

3          read, basically, you have three motions for today.

4                    MR. CHASE:  Correct, Judge.

5                    THE COURT:  Partial summary judgment and

6          then two motions to dismiss.

7                    MR. CHASE:  That's right, Judge.

8                    THE COURT:  With forum non conveniens being

9          one of those.

10                   MS. DUFFIE:  Yes, Your Honor.

11                   THE COURT:  All right.  Let me get my head

12         around it all.  What do you think is the best way

13         to approach it?

14                   MR. CHASE:  Judge, do you have any

15         suggestions.

16                   MS. DUFFIE:  I think they filed a motion

17         for summary judgment, the plaintiff.  I think it

18         probably makes more sense for them to start.

19                   THE COURT:  Well, forum non conveniens got

20         an attraction.  That would settle it all.

21                   MS. DUFFIE:  Okay.

22                   THE COURT:  I am concerned about the timing

23         issue on that one more than anything.

24                   MR. CHASE:  I have case law for Your Honor

25         on that.

Page 5

1           THE COURT:  Yes, a lot of which you cited

2      here already.

3           MR. CHASE:  Yes.

4           THE COURT:  Yeah.  I mean, if you think you

5      should take the summary judgment first.

6           MS. DUFFIE:  Your Honor, whatever you would

7      care to do.

8           THE COURT:  The time that I have had to

9      spend with it, unfortunately I am usually well

10     steeped in all of my hearings, but we're going to

11     have to start with the basics on this.  But I will

12     take it however you guys want to bring it to me.

13          MR. CHASE:  I would be happy to begin.

14          THE COURT:  What has been resolved or not

15     resolved.  Are we conferring or minimizing things?

16          MR. CHASE:  The only thing that is before

17     the Court now is the motion for partial summary

18     judgment filed by the plaintiffs.  And after that

19     was filed there was two motion to dismiss the

20     amended complaint, and the other one was motion to

21     dismiss on forum non conveniens.

22          Those are the only motions before the Court

23     today.  With respect to the meet and confers, that

24     had to do with subpoenas and we are very close to

25     an agreement on that.  We don't plan to argue that

Page 6

1          at all today.
2                    THE COURT:  Okay.  Those are basically
3          compelling for fees and all that.  Why don't we
4          tackle this partial summary judgment, which is
5          multiple, multiple points, if I got that right.
6                    MR. CHASE:  Correct, Judge.
7                    THE COURT:  All right.  Do you guys agree
8          on any of this stuff?  You guys are filing motions
9          and memorandums from the federal court into the
10         state court.  I don't know what you all consider
11         current right now other than this one is your forum
12         non conveniens.
13                   MR. CHASE:  The forum non conveniens is the
14         defendant's motion.
15                   THE COURT:  Right, right.  I'm just trying
16         to get -- this one notebook that I was provided
17         with doesn't -- the tabs don't match up to the
18         index to it.  So why don't we figure out what
19         documents we have here.  What is this?  U.S.
20         District Court in West Palm Beach tabs one through
21         25 plaintiff's/counterdefendant's motion for
22         partial summary judgment.  Is that the motion for
23         partial summary judgment?
24                   MR. CHASE:  Correct, Your Honor.  That was
25         the oldest motion that was filed on July 5th.

1          THE COURT:  In federal court.

2          MR. CHASE:  In federal court.

3          THE COURT:  Okay.  You have not converted

4     this and filed it in state court.

5          MS. DUFFIE:  We filed it as an initial

6     filing.

7          MR. CHASE:  We renewed it.  Instead of

8     refiling it, they filed opposition in state court.

9     We filed a reply in state court.

10          THE COURT:  Clear as mud.  All right.  So

11     that's your motion.  You have four points to it.

12          MR. CHASE:  Correct, Judge.

13          THE COURT:  Florida law governs this

14     dispute.  Why don't we take them one at a time.  We

15     will go as far as we can today.

16          MR. CHASE:  Would Your Honor like a summary

17     of the factual circumstances?

18          THE COURT:  I will need some of it.  I

19     mean, I did read enough that, I guess, I understand

20     defendant ultimately was working in California for

21     the plaintiff.

22          MR. CHASE:  We don't see it that way.

23          THE COURT:  Right.  Why don't you give me a

24     summary.

25          MR. CHASE:  So in 2011, there is a company

Page 8

1        that existed since 1994, Apartment Rental

2        Associates.  We will call them ARA.

3                THE COURT:  Which is the plaintiff.

4                MR. CHASE:  Which is the plaintiff.  They

5        conduct business in a number of states, including a

6        substantial amount of business in Florida.  In

7        2011, the defendant, Ms. Vysata, replied to an

8        advertisement for an unpaid internship.

9                Ms. Vysata started as an intern and then

10       she drafted in 2012 what was called a consulting

11       agreement.  Ms. Vysata's background --

12               THE COURT:  At this point in time, she was

13       living in California.

14               MR. CHASE:  She was living in California at

15       the time.  So she drafted a consulting agreement

16       and she is a real estate agent.  She is not a real

17       estate broker.  She was licensed as a real estate

18       sales person, real estate agent in California until

19       2015, and in Florida until 2007.

20               That document, which is Exhibit 1 to the

21       plaintiff's motion for partial summary judgment, is

22       a brokerage fee.  It looks like a brokerage

23       agreement.  It walks like a brokerage agreement.

24       It functions like a brokerage agreement.  There is

25       no differentiation in it whatsoever and a brokerage

Page 9

1        agreement except it is not called a brokerage

2        agreement.

3               The function of a brokerage agreement under

4        Chapter 475 of Florida law is an agreement that

5        calls for a commission payable to a broker for

6        brokerage activities that relate to real property.

7               THE COURT:  And this assignment was

8        performed in California.

9               MR. CHASE:  It was signed and executed in

10       California, but Ms. Vysata moved out of California

11       in 2015.  Everything that is relevant in this case

12       happened after Ms. Vysata moved out of California.

13              She is a resident of Florida, undisputed.

14       She has bought two pieces of property.

15              THE COURT:  She signed the agreement prior

16       to 2015.

17              MR. CHASE:  She did, correct.  There is

18       alleged performance from both sides after 2015.  So

19       everything that happened before 2015, our position

20       is that it is completely irrelevant.

21              THE COURT:  Okay.  Go on.

22              MR. CHASE:  Okay.  The way Ms. Vysata was

23       paid on these transactions was literally the exact

24       manner in which an outside broker was paid, other

25       transactions representing the buyer.  The outside

Page 10

1    broker and Ms. Vysata in the same manner would

2    charge a percentage of the sales price, full

3    commission, so no salary, no underlying salary,

4    full commission.

5            What is a very key exhibit that we would

6    point out for the Court is the affidavit of Audrey

7    Yaboa who prepared Ms. Vysata's tax returns every

8    year since 2014.  And Yaboa attests that never did

9    Ms. Vysata indicate that she was an employee of

10   Apartment Rental Associates.

11           In fact, Apartment Rental Associates never

12   indicated that Ms. Vysata was an employee.

13   Apartment Rental Associates never paid Ms. Vysata

14   any money.  Mr. Manowitz never paid Ms. Vysata any

15   money.  Every year since 2014 Ms. Vysata has

16   declared herself on her tax returns under oath,

17   Your Honor, as a self-employed person.  And that is

18   because Ms. Vysata owns a number of different

19   businesses.

20           Ms. Vysata operates numerous different web

21   businesses, dating websites,

22   tinyhouseproperties.com, tinyhomeproperties.com, 15

23   domain names Ms. Vysata has.  They are all on her

24   taxes.  She had never received a W-2 or a 1099.

25           In contrast, Apartment Rental Associates

```
 1        has employees and for the actual employees of

 2        Apartment Rental Associates, those employees

 3        receive W-2s.  They receive 1099s.  They are state

 4        and federal and tax withhold, social security tax.

 5        None of that happened with Ms. Vysata.  Until all

 6        times in (201) 420-1728 all of the years that were

 7        relevant she was always 3,000 miles away whether

 8        she was in Florida whether she was in Connecticut

 9        whether she was in New York she had four different

10        residences.  Nobody knows where she is.  She has

11        four different cars.  Nobody can keep track of her.

12              She has that right because she is a

13        self-employed person.  Parties conduct business at

14        arm's length and Apartment Rental Associates is a

15        long-term client of Ms. Vysata.  We agreed to that.

16              However, Ms. Vysata was never employed.  In

17        the three years preceding 2018 so 2017.  And 2014

18        Ms. Vysata and Mr. witnesses saw each other about

19        five or ten times total, total.  That's not an

20        employer-employee relationship.  Ms. Vysata would

21        take time off, substantial amounts of time, 40

22        hours of time to receive her commercial pilot's

23        license.  She, Ms. Vysata, studied in Europe.  She

24        has every right to do it because she is an

25        independent contractor.  The parties got into a
```

Page 12

```
 1          dispute because in the latter part of 2015 and it
 2          will show this very clearly the dispute centers
 3          around Ms. Vysata not wanting to come to
 4          California, frankly not wanting to come to
 5          California.  And the parties parted ways in
 6          November of 2017.
 7                   The parties both agreed in its own right to
 8          stop working with each other.  At the end of the
 9          relationship, there was some discussion about a
10          resolution as to the parties' competing claims.
11          The parties weren't able to resolve.  The parties
12          went forward with litigation.
13                   The lawsuit was filed here in this Court on
14          March 13, 28 by Apartment Rental Associates and
15          Mr. witnesses as plaintiffs.  They filed the
16          complaint.  On May 9, 54 days later, Ms. Vysata
17          removed to the U.S. District Court for the Southern
18          District of Florida; never filed a motion for
19          summary judgment, never filed a motion for summary
20          judgment for non conveniens, none of that.
21                   Then on day 16, Ms. Vysata filed a seven-
22          count counterclaim with claims under Florida law,
23          claims under ethical law, and most importantly,
24          Your Honor, a breach of contract claim.  That
25          contract, the same consulting agreement we contend
```

Page 13

1          that is a brokerage agreement.  She says there is a

2          breach of that agreement.  That agreement was

3          brought by Ms. Vysata in this Court.  This Court is

4          the court to decide that.  There has been an

5          amended complaint.

6                    THE COURT:  This Court or the federal

7          court?

8                    MR. CHASE:  This Court.  So the federal

9          court.

10                   THE COURT:  Remanded.

11                   MR. CHASE:  Remanded pursuant to our motion

12         for remand it was an untimely removal.  There was

13         some games with service of process and Judge

14         Rosenberg determined that the initial service which

15         we effectuated was valid.

16                   And so Judge Rosenberg remanded it because

17         the removal was untimely in no way can the under

18         typically necessary of a removal enure to Ms.

19         Vysata's benefit.  In no way.  It was remanded on

20         8-1.  Then on 8-7, 144 days after service was

21         effectuated on March 16, that is when the motion

22         for forum non conveniens was filed under rule

23         1.0062 G.  The case is crystal clear and says that

24         the case must be brought within 60 days.  The

25         fourth district has been crystal clear.

Page 14

1           THE COURT:  What about the issues she

2      raises excusable neglect, but what about the cases

3      that show that you can consider excusable neglect?

4      It says shall.

5           MR. CHASE:  I'm not aware of a case where

6      excusable neglect has been held to extend that

7      60-day --

8           THE COURT:  That is not a kind of argument

9      for forum non conveniens.

10           MR. CHASE:  That kind of dovetails into

11      that, but I could stick with the motion for partial

12      summary judgment.

13           THE COURT:  It is forum non conveniens,

14      then should I rule on the motion for summary

15      judgment?

16           MR. CHASE:  If the Court would grant the

17      motion for forum non conveniens, that could moot

18      the motion for partial summary judgment.

19           THE COURT:  I am not inclined to do it one

20      way or the other.  I don't want this to be seen as

21      a signal.  It just seemed to meet threshold.  You

22      are touching on both motions.

23           MR. CHASE:  So the first point of the

24      motion for partial summary judgment, which is the

25      first motion that was filed in terms of the time

Page 15

1          frame, is Florida law should govern.  Why should

2          Florida law govern?  Because Ms. Vysata is

3          undisputedly a resident of Florida.  She declared

4          her Boca Raton home as her homestead for two years

5          in a row, 2017 and forward looking, 2018.

6               There is no dispute that there is personal

7          jurisdiction over Ms. Vysata in Florida.  There is

8          no dispute that a Florida real estate transaction

9          in Gadsden County, Florida began in 2017 and

10         continued into 2018.

11              That's one of the two real estate

12         transactions that's disputed with respect to this

13         commission.  Ms. Vysata filed in this case not in

14         any California case that there is a breach of

15         contract, this very contract.  Subsequent to Ms.

16         Vysata's seven-count counterclaim, including the

17         seven-count counterclaim, including all manner of

18         claims in Florida.

19              On June 12, a month later, Ms. Vysata filed

20         without moving to amend her counterclaim in this

21         case, she filed a lawsuit against Apartment Rental

22         Associates and Mr. Manowitz in Los Angeles Superior

23         Court for sexual harassment and she made those

24         claims claiming that she was an employee some 3,000

25         miles away when the parties are subject to this

Page 16

1       written brokerage agreement where we couldn't send

2       she is absolutely not an employee.

3                    THE COURT:  When was that filed?

4                    MR. CHASE:  That was filed on 6-12.  So

5       that was filed a full month after the seven-count

6       counterclaim in this case.  In fact, some of the

7       counts in the seven-count counterclaim are actually

8       from the same labor law subsection that the counts

9       were filed in the California action.

10                   What we have responded with, with respect

11      to the California lawsuit is we have moved to

12      dismiss it based on claimants and that's a phrase

13      res adjudicata that we have cited the Supreme

14      Court, 9th Circuit, 11th Circuit across the board

15      courts substantially frown upon, I wouldn't say

16      substantially uniformly putting claims in different

17      baskets.

18                   We have contended all along that all the

19      claims between these parties should be litigated in

20      the same court, in the same action.

21                   THE COURT:  So you agree on that.

22                   MR. CHASE:  We agree on that.  So when

23      determining which court should hear the claims,

24      there is a rule called the first to file rule.  And

25      the first to file rule says the plaintiff gets the

Page 17

1      presumption.  If there is proper jurisdiction in

2      that first court, the plaintiff gets the

3      presumption.

4           THE COURT:  There is case law that has

5      weakened that significantly.

6           MR. CHASE:  Sure, but in this case, Judge,

7      it is not just the plaintiff, it is the plaintiff,

8      the counterclaimant and then the plaintiff for the

9      amended claim.  So it is not just the first to

10     file.  The first to file was Apartment Rental

11     Associates, Mark Manowitz here.

12          The second to file was Ms. Vysata here.  At

13     no point prior to 8-7, 144 days after she was

14     served, did Ms. Vysata move to transfer this case

15     to the California case.  Never.

16          In this case, we have exchanged, the

17     parties, 14,344 documents in discovery.  The

18     parties have responded to 11 different sets of

19     discovery responses.  Two depositions have been

20     taken in this county.  In California, no discovery

21     has been taken at all.  There have been discovery

22     requests served by Ms. Vysata which are duplicative

23     of discovery requests in this case, in which we

24     have moved for a stay and moved for a protective

25     order.

Page 18

1        It is our position that, number one,

2   related to the motions today, the dispositive

3   motions, we believe there is no merits to any of

4   the motions to dismiss, number one.

5        The motion to dismiss for forum non

6   conveniens is untimely as a matter of law, and even

7   if it wasn't untimely, it is not well taken.  It

8   fails on all the different substantive grounds.

9        The motion to dismiss the first amended

10  complaint, we have responses to that, and I could

11  go through them if the Court would like.  And we

12  believe that that would be denied.  The first

13  amended complaint is extraordinarily comprehensive.

14       They show the claims' fundamental facts,

15  according to each claim and dismissal should not be

16  granted.  So what we are left with here, Judge, are

17  proceedings that are happening in California and

18  proceedings that are happening here.

19       And I can inform the Court about the most

20  recent discussions that occurred in California less

21  than two weeks ago.  The California court asked the

22  parties to report back after these motions were

23  litigated and resolved.  So we would like to

24  litigate these motions.

25       We have north of 23 different subpoenas

1           that we have now narrowed the scope on almost all

2           of them and plan to file them in Florida.

3                    To the extent that there is a discussion

4           about out-of-state evidence and out-of-state

5           witnesses, we have now made the defendants aware of

6           what the case law is.

7                    The case law is that serving notice of

8           intent to serve a subpoena under Florida rule

9           1.351, and then if it is an out-of-state subpoena,

10          then you follow the domestication process pursuant

11          to the Uniform Discovery Act.

12                   THE COURT:  Yeah, I was going to ask,

13          because I didn't agree to compulsory service

14          because service of process is not available.  That

15          was one of the arguments that was made.  You were

16          saying that compulsory service of process is not

17          available to some party.

18                   MS. DUFFIE:  Not the motion to raise it res

19          adjudicata.

20                   THE COURT:  No, for forum non conveniens.

21          Yeah, one of the arguments was you couldn't get

22          other witnesses, but I think there is process that

23          you can, not that I think it matters.

24                   MS. DUFFIE:  You mean the subpoena power.

25                   THE COURT:  Yeah.  What's going to be the

```
 1          most -- what's weird to me about the size of this
 2          case is the initial claims on the real estate
 3          brokerage contract agreement are narrow.
 4                  There is not going to be that many
 5          witnesses to it.  It is a narrow universe.  You
 6          have a sexual harassment employment case in
 7          California, that's going to be incredibly witness
 8          intensive.
 9                  MR. CHASE:  Judge, I can respond to that.
10                  THE COURT:  So bringing that from
11          California to here, and I used the employee term,
12          and I didn't really mean to be that specific and I
13          saw your sensitivity to that, but I wasn't making a
14          ruling on the clarification, but if that allegation
15          is there while she was an employee of the company
16          and what the company is, if it is a California
17          company, it seems to me that that case is much
18          stronger, much more policy reasons to have that go
19          forward in California, not here.
20                  MR. CHASE:  A few thoughts on that.  One,
21          we have stated this and it is set forth in the
22          complaint that there are more witnesses in Florida
23          as to that than there are in California.
24                  Everything that is alleged in that
25          complaint that happened to have been filed in
```

Page 21

```
 1        California because the attorneys frankly live on

 2        the west coast, and three of the attorneys that are

 3        on that case are on the west coast.  That's the

 4        inconvenience.  Ms. Vysata lives here.

 5              So the notion that if more evidence is

 6        somewhere else, Mr. Manowitz and Apartment Rental

 7        Associates have not only consented to the

 8        jurisdiction of this Court, have selected the

 9        jurisdiction of this Court because this is where

10        personal jurisdiction over Ms. Vysata is.

11              So evidence can be obtained, a subpoena for

12        documents as to ARA, the company, can be served on

13        counsel.  This discussion about evidence being

14        somewhere else.  It is not 1758.

15              There are uniform interstate discovery acts

16        that documents can be produced when there is --

17        across state lines.  So this is not this federalism

18        issue with respect to subpoenas.

19              THE COURT:  But you are going to argue now

20        that you can't go forward -- you are going to argue

21        now on the res adjudicata on the claims in

22        California, but what you are telling me now is your

23        client would be amenable to having those claims

24        brought within this lawsuit.

25              MR. CHASE:  Absolutely, Judge.
```

Page 22

1              THE COURT:  What's the benefit to that?

2              MR. CHASE:  The benefit is administrative

3      convenience for starters.  Also the case law

4      requires it, because any time there is a common

5      nucleus of operative facts, and here, there cannot

6      be any credible assertion that there is not a

7      common nucleus of operative facts with the parties

8      communications over the years.

9              There is only an allegation against Mr.

10     Manowitz.  The company stuff, that's really kind of

11     a misnomer because it is really kind of just one

12     person.  So there have been --

13             THE COURT:  Yeah, that's what I saw in some

14     of the documents.  Who is the argument that this

15     consulting agreement was with?  It is signed by him

16     and apparently individually.

17             MR. CHASE:  And Apartment Rental Associates

18     as the company.

19             THE COURT:  It says it's between agent of

20     Apartment Rental Associates.  I am sure you all

21     dispute what that is.  Is it a company contract or

22     is it an individual contract?

23             MR. CHASE:  We say it is an individual

24     contract.  Ms. Vysata drafted it.  So the

25     performance of a contract in breach of a contract,

Page 23

1              not the existence of the contract.  Nobody disputes

2              the existence of the contract.

3                      The performance and the breach of the

4              contract is always, under California law and

5              Florida law, governed by the state's law where

6              performance was rendered or breach occurred.

7                      THE COURT:  Well, here you have one --

8              where was the other property performed?  You said

9              one property -- and this is just the sale of

10             property, right?  One property was in Florida.

11                     MR. CHASE:  The other one was in Louisiana,

12             nothing in California.

13                     MS. DUFFIE:  Your Honor, to clarify, the

14             one property, Ms. Vysata hasn't been paid on.

15             That's the only property that is located in

16             Florida.  The other properties are located outside

17             of Florida.

18                     THE COURT:  In Louisiana, the other one?

19                     MS. DUFFIE:  Yes.

20                     MR. CHASE:  A key part of this case, Judge,

21             with respect to these, quote unquote "wage claims,"

22             she never received any wages anyway.  This

23             agreement on its face is actually enforceable

24             because it is an unlicensed brokerage agreement.

25                     That's why chapter 145 in Florida law is so

Page 24

1          important because there is no legal obligation,
2          there can't be a legal obligation.  That agreement
3          is cut off.  It is null and void.  The parties did
4          perform under it in the past, but as to a future
5          obligation under that agreement legally, there
6          cannot be one, because it would be illegal.
7                   And the Florida Department of Real Estate
8          agrees and there is an investigation as to Ms.
9          Vysata's unlicensed brokerage activities from the
10         State of Florida.
11                  So that agreement can't be used in the
12         breach of contract claim to demand that anyone owes
13         Ms. Vysata any money as a matter of law because it
14         is void and unenforceable.  So that is a point of
15         law --
16                  THE COURT:  Well, it wouldn't be void and
17         unenforceable for the Louisiana property.
18                  MR. CHASE:  Perhaps, and so this is
19         something that was thought of.  The question is, if
20         a broker, unlicensed or licensed, is stationed in
21         Florida, there is no dispute that this is a Florida
22         broker charging money from Florida of third
23         parties, but when that property is located in
24         Florida, no question, 475 applies.
25                  The question is if the property is located

Page 25

1              in Louisiana, what state law applies to whether

2              that commission --

3                        THE COURT:  Louisiana, wouldn't it?

4                        MR. CHASE:  Maybe.  Our position is that it

5              is still Florida law applies, because this is

6              Florida brokerage.  Whether the real estate --

7                        THE COURT:  Yeah.  Let me stop you with a

8              nod.  But you have an agreement signed in

9              California.  Just because of the fact that she

10             lives here doesn't mean she is conducting business

11             here.

12                       MR. CHASE:  But imagine, Your Honor, if she

13             was a licensed Florida broker.  Her business was in

14             Florida.  That would be jurisdiction in Florida

15             under the purview and ambit of 475.

16                       THE COURT:  If I have a Florida licensed

17             broker and I fly to Louisiana and I do a deal in

18             Louisiana, I'm not doing that as a Florida licensed

19             broker because I don't need my license for that

20             deal in Louisiana.  So Louisiana law would apply to

21             it.

22                       MR. CHASE:  Well, 475 -- I'm not aware of a

23             case that has held and we have looked at the cases

24             that defendant has cited with the principle that,

25             quote, some other state's law should apply when the

Page 26

```
1        broker is located in Florida.
2               No case law that I have seen, and if there
3        is other case law, I would happy to look at it, no
4        case has held that a Florida real estate broker
5        that attempts to charge fees for an out-of-state
6        transaction, let's assume it is in North Dakota, no
7        case has held that that broker is not regulated by
8        chapter 475, because all Florida brokers are
9        regulated by Florida statute section 475.  That is
10       the governing statute.
11              THE COURT:  But do you have a case that
12       says when the Florida broker is in Texas, that
13       their actions in Texas with Texas residents are
14       governed by the Florida statute?
15              MR. CHASE:  I haven't seen it, but what we
16       have seen is that when that Florida broker is
17       unlicensed, they can collect commissions in no
18       states, certainly not in Florida.  It would be
19       unlicensed activity.
20              Ms. Vysata after 2015 was licensed to be a
21       broker nowhere.  Actually, Ms. Vysata has never
22       been licensed to be a broker.  So she can't collect
23       a commission.  So what is being asserted is this
24       retroactive assertion of, oh, I was an employee,
25       but I guess I must have misclassified myself.
```

Page 27

1          So we have never had an objection, Your

2     Honor, to the sexual harassment claims being

3     brought in this Court.  We have never had a

4     substantive objection.  We never said you can't

5     bring it.  We have conducted substantial discovery

6     in this Court.  Let's keep it in this Court.  We

7     want to litigate it all together.

8          So we have no objection to an amendment of

9     the counterclaim to allow those claims to be

10    brought.

11         THE COURT:  We can't even touch the surface

12    of all of this is stuff.  It's too many issues.  I

13    am focusing now more on the law that applies in the

14    relationship -- I understand the relationship

15    between these two cases and these two parties.

16         Where do you stand on the forum non

17    conveniens?  I think you did cite a case that says

18    justifiable excuse can be used to extend the

19    timing.

20         The threshold issue to me is the timing

21    because I think the statute does say shall do it

22    within 60 days.  I didn't see an impediment to not

23    raising the issue even in federal court, if forum

24    non conveniens translates over both courts.

25         Instead of a counterclaim, that could have

Page 28

1    been a defense raised in the federal court.

2              MS. DUFFIE:  Well, Your Honor, it is

3    Florida statute 1.601(d), which requires 60-day

4    service.  There is no equivalent statute in federal

5    court.

6              THE COURT:  No, the timing.

7              MS. DUFFIE:  Our position is that the case

8    was pending in Federal court for, I believe, it was

9    54 days.  And then the motion to dismiss based on

10   forum non conveniens was filed on August 16.

11             THE COURT:  Six days after it came back.

12             MS. DUFFIE:  Right, six days after it came

13   back.  So it would have been at the very least six

14   days after the federal court granted the motion to

15   remand, which is when state court motion was

16   actually filed.  So our position is the time when

17   it was pending in federal court, the statute stayed

18   it.

19             THE COURT:  The tolling stayed it.

20             MS. DUFFIE:  Right, the statute 1.061 the

21   statute wasn't running.  So our position is that it

22   was filed timely or in the alternative, if Your

23   Honor finds it wasn't filed timely, our position is

24   that it would be excusable neglect.

25             THE COURT:  What were you doing in the

Page 29

```
 1          federal court?  You removed it to federal court.
 2                  MS. DUFFIE:  We had a hearing.  I attended
 3          the hearing with Mr. Chase where the Court took
 4          testimony to determine whether or not there was
 5          proper service made; whether Ms. Vysata was
 6          properly served, because they actually effectuated
 7          service through her mother.
 8                  THE COURT:  Got you.  Was it ever ruled
 9          upon?
10                  MS. DUFFIE:  Yes.  She felt it was proper
11          service and that's when the case was remanded back
12          to you with our motion to dismiss.
13                  THE COURT:  Was it served in Palm Beach
14          County under Florida law.
15                  MS. DUFFIE:  Right, in Boca Raton.
16                  MR. CHASE:  Your Honor, I have a couple of
17          cases.  I have provided these to counsel.  It is
18          Phillips versus American Optical Corporation in
19          Costa core Share and Cruises.  May I approach?
20                  THE COURT:  Do they deal with remands?
21                  MR. CHASE:  They do.  Not with remands.
22          With respect to the federal court proceedings that
23          would be governed by rule 12, and it was not even a
24          proper motion to dismiss under rule 12.
25                  THE COURT:  They are reflecting service.
```

Page 30

```
 1       Was a response filed to the complaint in federal
 2       court, the counterclaims in federal court or filed
 3       subsequently?
 4                MR. CHASE:  I don't know that a response
 5       has been filed pursuant to the counterclaim to the
 6       amended complaint.  We filed an answer -- actually,
 7       yes.
 8                We filed an answer to the counterclaims in
 9       federal court and the holding of the district court
10       was that service was proper the whole time and the
11       motion to quash was denied.  So service was proper.
12                So it would be one thing if service was
13       improper and it was some defect in service.  Here,
14       there is no exception for remand scenarios, and the
15       Fourth DCA has been crystal clear and uniform
16       across the board about the 60-day rule under rule
17       1.60 1(g).
18                MS. DUFFIE:  We cited a case, S.U. Global
19       Inc. versus Tactical Support Services, there is a
20       Florida district court case, a DCA case that says
21       the plain meaning of the rule allows the trial
22       court to consider whether excusable neglect applies
23       to the forum non conveniens context.
24                THE COURT:  That was the excusable neglect
25       case that I looked at.  What's the excusable
```

Page 31

```
 1          neglect?  You're saying that --
 2               MS. DUFFIE:  Our position was just that
 3          while the case was pending, that jurisdiction lied
 4          in the federal court.
 5               THE COURT:  There was no clock running
 6          against you in state court.
 7               MS. DUFFIE:  Correct.
 8               MR. CHASE:  Even if that were true, Judge,
 9          jurisdiction was in the federal court, they still
10          missed the rule 12 deadline.
11               THE COURT:  I don't know if they did.  Is
12          that a motion?
13               MR. CHASE:  Right, Judge.  We filed the
14          counterclaim.  Our complaint they were served on
15          3-6-16 removed to federal court on 5-9 and a
16          counterclaim on 5-16.  They should have filed a
17          motion to dismiss on rule 12 for forum non
18          conveniens.
19               If they were relying on federal court
20          analog, that was the time to do it.  The rule 12
21          expired months ago.
22               THE COURT:  I think what counsel said is
23          there is no deadline for filing forum non
24          conveniens in federal court.  The rule 12 is not a
25          deadline for them.
```

Page 32

1           MR. CHASE:  My understanding is that there
2     is a rule 12 motion to dismiss for forum non
3     conveniens.  If this is a motion to dismiss for
4     forum non conveniens not under rule 12, that would
5     be an interesting position for them to be relying
6     on.
7           None of the case law in the Fourth DCA or
8     anywhere in Florida has held that that is excusable
9     neglect.
10          THE COURT:  All right.
11          MR. CHASE:  And one more point on that,
12    Judge.
13          THE COURT:  Yes.
14          MR. CHASE:  The parties engaged in a
15    feverish amount of discovery in the federal court.
16    We were served with discovery requests, a motion to
17    compel, all this before a motion to dismiss for
18    forum non conveniens.  Then it didn't become
19    inconvenient until a remand.  It was convenient
20    before that in litigation and then it became
21    inconvenient.
22          THE COURT:  That's what I'm trying to
23    gauge.  So, yes, basically in the federal court
24    proceedings, you guys went forward, raised
25    affirmative defenses, sought affirmative relief.

Page 33

1             MS. DUFFIE:  Were didn't have to waive

2         them.

3             MR. CHASE:  Also served discovery and a

4         motion to compel.

5             MS. DUFFIE:  Your Honor, should we reset

6         the motions for when you have, when there is a lot

7         more, I don't know if you go on your docket trial

8         calendar for a non-evidentiary hearing, what makes

9         more sense to you.

10            THE COURT:  What makes more sense is trying

11        to get this resolved now.  I'm just not sure I have

12        enough information.  I have too much information in

13        one sense that I have got these lined up.  I'm not

14        sure, just going back to the Florida law that

15        governs this disputes, I'm not sure what law, just

16        because it becomes moot, I don't think it drags

17        everything with it.

18            I'm going to need to know more.  I'm not

19        going to have five days to spend on this case on

20        these motions.  We need to figure out a way to get

21        this more concisely packaged for me.

22            MR. CHASE:  I have a suggestion for Your

23        Honor.  Perhaps we could hold the motion for

24        partial summary judgment in abeyance and the court

25        could rule on the motions to dismiss.  Maybe that

Page 34

1     would move the case forward.

2             THE COURT:  You have the independent

3     contractor versus the employee.  I'm just looking

4     at your partial motion.  So this is the federal

5     court one, right?

6             MR. CHASE:  Right.  What I'm saying is we

7     can withdraw that for the time being or hold it in

8     abeyance to make it more discreet.

9             THE COURT:  The problem is they are all

10    interwoven.  Which court, which law applies may

11    affect where this is best litigated.  You know, one

12    if the California law is the law that applies

13    although I don't really see much argument for that.

14    What law is you are arguing applies?

15            MS. DUFFIE:  Well, Your Honor, our position

16    is Florida law doesn't apply because the one sole

17    property at issue in Florida Ms. Vysata was never

18    paid on.

19            THE COURT:  Yeah, but she is suing to be

20    paid, right?

21            MS. DUFFIE:  Correct.

22            THE COURT:  You are trying to enforce

23    payment so you can't say she hasn't been paid loses

24    the Florida interest.  That squarely falls within

25    Florida law and all the defenses that they have

Page 35

1           raised.  She is trying to collect a commission on

2           the sale of Florida property while she was living

3           in Florida.

4                    You know, I don't see a way around these

5           Florida brokerage requirements.

6                    MS. DUFFIE:  Right.  For the one Florida

7           property, I can't argue with you.

8                    THE COURT:  Yeah.  That almost warrants

9           dismissal of that claim right there.

10                   MS. DUFFIE:  Dismissal of which claim?

11                   THE COURT:  Her claim to recover those

12          commissions.

13                   MS. DUFFIE:  So you mean --

14                   THE COURT:  I don't know how the counts are

15          laid out.  I haven't been dealing with this case

16          for a while.  I don't have a half a day to

17          leisurely read through all of this.  I try my best

18          to be overly prepared, but I don't see how, I mean,

19          you are conducting yourselves in Florida.

20                   I think the laws that they have lied out

21          apply to participate in the brokerage business.  Is

22          that why you are trying to characterize this as an

23          employee?  She would still be subject to Florida

24          brokerage laws, wouldn't she?

25                   MS. DUFFIE:  Well, Your Honor, she only

Page 36

 1          moved to Florida in 2015.

 2                    THE COURT:  That is what I have written.

 3                    MS. DUFFIE:  Right.  And she began

 4          employment with the plaintiff much earlier.

 5                    THE COURT:  Right.  Before she got to

 6          Florida, you know, in the beginning of 2012.

 7          Actually, you said she started as an intern.

 8                    MS. DUFFIE:  Right.  She started working

 9          from September of 2011 until February of 2018 and

10          then she became an analyst.  And Your Honor, just

11          to briefly address opposing counsel's position

12          about her employment agreement.  My firm often

13          files lawsuits based on classification.

14                    More often than not, employees misclassify

15          themselves or just adhere to whatever

16          classification was provided to them by their

17          employer.

18                    THE COURT:  Right.

19                    MS. DUFFIE:  But that is not a --

20                    THE COURT:  Determinative.

21                    MS. DUFFIE:  It is not determinative.

22          That's correct.  That's something we see often.

23                    MR. CHASE:  Judge, this was not a captive

24          individual.  This was somebody way away.

25                    THE COURT:  I know, these are the factual

1      arguments, but I am sure there are counter

2      arguments about how she was controlled or what have

3      you.  But, all right, how do we organize this so

4      that I can actually make some rulings?

5              MR. CHASE:  Your Honor, here is what I

6      suggest.  We step back, the plaintiffs step back

7      from the motions for partial summary judgment

8      because there is a lot of moving parts and I think

9      the more simple and discreet motion that the Court

10     can rule on, particularly the motion to dismiss for

11     forum non conveniens, that's a Fourth DCA case

12     directly on point.  There are a whole line of cases

13     directly on point.

14             There has not been an adequate showing of

15     excusable neglect, nothing that has been shown at

16     all, and even if it was an attorney error, they

17     haven't even said it was an error.

18             It was a tactical decision to move forward

19     full steam in Florida until they decided they

20     didn't want to.  So the rule is crystal clear and

21     it is a 60-day hard and fast rule.  Use it or loose

22     it.  No exception for remands.

23             MR. KALISH:  And Your Honor, this is Dan

24     Kalish.  Ms. Duffie is our local counsel.  She

25     doesn't know quite know the tactical strategies, I

Page 38

1      would default.  The basic idea is that we were

2      waiting to see what court we were going to be in.

3              We did not know if we were going to be in

4      federal court or how had to be remanded to State

5      court and as a result, we wanted to wait for that

6      resolution before we started to file a lot of our

7      two substantive motions.

8              There were two substantive motions that we

9      wanted to present to the federal court in Florida

10     or the state court for Florida and those were

11     motion for to dismiss for failure to state a claim

12     and motion to dismiss for forum non conveniens.

13             Our strategy was to see what court was

14     appropriate and then decide.  From our perspective,

15     we didn't know quite how to file a motion to

16     dismiss for forum non conveniens in the Florida

17     state court when there is no pending action in the

18     Florida state court, because it was in Federal

19     court.

20             And the way we reviewed the rule was that

21     if it is a Florida State court action, you have to

22     file it within 60 days.  If it is a Florida federal

23     court action, you actually don't have to file it

24     within 60 days, and actually there is not a time

25     limit in Florida federal court.  And it is not

Page 39

1          appropriate for a rule 12 motion.  You are not

2          supposed to bring it as a 12 B motion.

3                    You are supposed to bring it another way.

4          That's why the way we viewed it was that we didn't

5          quite know what to do, but we thought the better

6          reading was that if we were in Florida court, the

7          Florida procedures apply, the procedure that you

8          have to file within 60 days, and that's why we

9          didn't do it in federal court.  We intended to

10         once we got a ruling that we were going to be in

11         Federal court which we thought was more

12         appropriate.

13                    Once the case was remanded, we recalculated

14         the 60-day calendar and we I ended up filing within

15         60 days that it was in Florida state court.

16                    THE COURT:  What was the date, it was 54

17         days before removal?

18                    MS. DUFFIE:  Yes, Your Honor.

19                    THE COURT:  And then six days after it was

20         remanded.

21                    MS. DUFFIE:  Correct.

22                    THE COURT:  So if you did consider the

23         federal court and tolling, it could have been on

24         time.

25                    MS. DUFFIE:  Yes, I believe it was a day

Page 40

1     early.

2              MR. CHASE:  I don't know if I agree with

3     that, Judge.  Even if it was timely, and it was not

4     timely, as a matter of law, it shouldn't be granted

5     and we can argue the merits of that.

6              THE COURT:  Forgive me, and I don't mean to

7     be so piecemeal over this, but I wanted to resolve

8     that timing issue, because it is not like they

9     could have filed a motion to protect the 60-day

10    limit while they were in federal court.

11             MR. CHASE:  They could have dropped a

12    footnote.  They could have said something.  There

13    is no reason why they could have filed a rule

14    12(b)(3).

15             THE COURT:  I think that's the wrong number

16    on non conveniens, but challenges to venue.

17             MR. CHASE:  They didn't do it.  They filed

18    a counterclaim and went forward full steam on

19    discovery.

20             THE COURT:  That's the factor that to me

21    is not the 60-day time limit, but it is that

22    behavior of affirmatively litigating it here as

23    opposed to removing at your earliest convenience if

24    it is not convenient to try to take your stab at

25    something here.

```
 1            That's why I was trying to get a handle on
 2       exactly what motions you have filed in Florida.
 3       You haven't filed answer to the motion to dismiss,
 4       but you did file a counterclaim.
 5            MR. CHASE:  To the original complaint.
 6       That was the time to file a motion to dismiss for
 7       forum non conveniens.
 8            THE COURT:  I don't know if it is required,
 9       but I think it just goes in the bundle of factors.
10       It is my understanding of the forum non conveniens
11       is that it's a balancing test.  You know, all the
12       different reasons to proceed in one forum versus
13       the other, you pile them all up to see what
14       outweighs the other.
15            MR. KALISH:  If I could add on that,
16       because I know a lot about the California
17       litigation.  There is a pending sexual harassment
18       case in California.  It is our view and Mr. Chase
19       and I myself disagree, but our opinion is that it
20       was not going to dismiss the California federal
21       court action and we are going to have a lawsuit and
22       the factual disputes are human and the witnesses
23       are human and when we talk about the witnesses in
24       each state in terms of in California, we have
25       Audrey Yaboa who is one of the people who provided
```

Page 42

1      a declaration.  She lives in California.

2             We have every single employee at the Los

3      Angeles office who he wants to basically depose who

4      we think are relevant to not only describe her

5      relationship between Manowitz and our client, but

6      also to describe exactly what Ms. Vysata did.

7             We also have another woman who has filed a

8      lawsuit against Manowitz and Apartment Rental

9      Associates in the California court and she was also

10     a victim of sexual harassment.  And there is an

11     evidentiary rule that allows us to bring in similar

12     instances of sexual harassment in similar

13     situations we have had.  So we have her testimony

14     as well, too.

15            And although we will be able to depose all

16     those people whether or not the case is in Florida.

17     We will not be able to bring those people to

18     testify in live court in Florida.  So if we have a

19     jury trial in Florida on the sexual harassment

20     claims, we won't be able to, we cannot compel them

21     to get on a plane and fly to Florida.

22            As a result, we are not going to have, the

23     way we view it, about 80 percent of the witnesses

24     we need to actually testify in the sexual

25     harassment lawsuit if this case was in Florida.

```
                                                    Page 43

 1              That's why we think it is a lot more

 2         appropriate in California.  And one other thing

 3         that Your Honor that hasn't been discussed.

 4              Mr. Chase has brought up a lot about the

 5         fact that they were the first to file in Florida

 6         and there is a presumption.  We don't believe that

 7         presumption applies for a number of reasons, but

 8         one of them is that they didn't have a legal right

 9         to file their lawsuit in Florida state court.

10              You can only file a lawsuit in Florida

11         state court if you have registered to do business

12         in the State of Florida.  They didn't do that.

13         They didn't actually do that until late September.

14              So when we think about sort of who filed

15         first, the way we think the Court should look at

16         this is who legally filed first.  And it is our

17         view that basically they did not file their action

18         legally until late September at the earliest, and

19         it is also another reason why that should moot the

20         motion to dismiss.

21              THE COURT:  You think that should moot it.

22         Does that defect in the foreclosure, if you don't

23         have possession the day you file you are out of

24         standing, but is that cured by filing.

25              MR. CHASE:  Absolutely 100 percent, but it
```

Page 44

1      doesn't apply to individual.  It is cured right

2      away.

3              THE COURT:  It is still unclear whether you

4      consider this an individual or a corporate

5      contract.

6              MR. KALISH:  And Your Honor, I couldn't

7      find case law.  The case law in other states almost

8      all states have a similar rule like that.  Some

9      states I have found have that you could cure it.

10     Other states by, you know, just registering with

11     the states.  Other states, they say you can't cure

12     it.

13             I looked at the Florida law and I wasn't

14     able to find Florida law.  My view is it is a

15     position of first impression whether you could

16     actually cure it.  We would argue that they can't.

17             But even if they could cure it, we would

18     argue that technically they shouldn't get the

19     advantage that they filed their lawsuit first when

20     they filed it properly and through all these

21     presumptions of fairness, et cetera should have

22     been considered legally filed in late September at

23     the earliest.

24             MR. CHASE:  I have two responses in

25     response to that.  Number one, that issue doesn't

Page 45

1          apply to the individual at all.  Mr. Manowitz is a

2          party and he was counterclaimed against as a party.

3                    THE COURT:  Really?

4                    MR. CHASE:  And it is absolutely cured once

5          that registration is done.  It is done.  With

6          respect to this notion that there are so many

7          people in California.  Mr. Manowitz has submitted

8          to the jurisdiction in Florida.  ARA and the three

9          people that are in the office, some of which don't

10         even know Ms. Vysata, didn't work with her, they

11         are newer people.

12                   Ms. Vysata almost never was in the office.

13         So this knowledge of people in the office is a

14         fiction.  There were 20 witnesses that we discussed

15         in our opposition that are in Florida, particularly

16         with respect to the sexual harassment claims.  In

17         detail about this dinner as a restaurant in Miami

18         turns out it was at the Fountainbleu.  That's

19         Florida.  All the witnesses are in Florida.  That's

20         all Florida.

21                   There is discussions about flowers that

22         were sent to Ms. Vysata's home in Boca Raton.  Her

23         mom saw.  Her brother saw.  Her neighbor saw.  It

24         was a huge deal.  There was a giant section of the

25         complaint devoted to that.  The only witness in

Page 46

 1     California would be Mr. Manowitz.

 2          Mr. Manowitz has substantial connections in

 3     South Florida in Palm Beach County particularly.

 4     There is an office of Apartment Rental Associates,

 5     business that's connected in Florida.

 6          So this California weight of gravity, if

 7     you take the attorneys out of the equation and

 8     imagine that Mr. Kalish, imagine that he is right

 9     here, why are we talking about California at all.

10          The west coast attorneys, the three west

11     coast attorneys, it is more convenient for them,

12     but how could it be inconvenient for Ms. Vysata in

13     2018 with the Uniform Interstate Discovery Act.

14          This notion that Ms. Yaboa, who by the way

15     is a witness for the plaintiff in no shape that all

16     of a sudden Ms. Vysata so desperately wants Ms.

17     Yaboa to testify.  We will be happy to bring Ms.

18     Yaboa.

19          She will testify that Ms. Vysata not only

20     declared herself a sophisticated person by the way,

21     not only declared herself to be a self-employed

22     person.  It was affirmatively so.  And she, in

23     fact, also and this is in Ms. Yaboa's affidavit,

24     told Ms. Vysata she is starting her other

25     businesses.

Page 47

1          She is specifically self-employed.  We will

2     see the tax returns at one point.  We will see it.

3          MR. KALISH:  Your Honor, if I could just

4     add.  I think Mr. Chase is getting in the merits a

5     little bit, and maybe we should focus on what is

6     maybe a more convenient forum.

7          We disagree on a number of witnesses.  It

8     is true.  He said there is going to be a lot more

9     witnesses out of Florida.  We believe there is

10    going to be a lot more witnesses out of California.

11    But one of the more important things I think that I

12    want this Court to focus on is Mr. Chase went to

13    the California court and made almost all of these

14    identical arguments.  And the California federal

15    court dismissed this case, Your Honor, and we can

16    do all of this in Florida.

17         And the California federal court gave a

18    tentative ruling and I have attached that as one of

19    my exhibits.  It lists the tentative ruling.  The

20    tentative ruling is that California is going to

21    deny ARA's and Manowitz's motion to dismiss.

22         And that essentially means there will

23    almost surely be a federal court lawsuit in

24    California with the same parties and overlapping

25    issues.  And we're going to have a situation that

Page 48

1    we have now.  We're going to have different rulings

2    from different courts.  We're going to have

3    different, sort of different discovery rulings,

4    different rulings on res adjudicata and different

5    rulings on the same situations.

6         And what Mr. Chase emphasized in the

7    California courts is you shouldn't have two trials.

8    You should choose one and the California court says

9    that may all be good and dandy but my inclination

10   is I'm not dismissing the California federal court

11   action.

12        When you talk about forum non conveniens,

13   they do say, I don't know why it is not

14   inconvenient for Ms. Vysata to have the case in

15   Florida.  And that's probably right in the sense

16   that, you know, it is not convenient for Ms. Vysata

17   in the sense of traveling, but it is also not

18   convenient for ARA and Manowitz to have the case in

19   California.

20        And because almost surely the case in

21   California will exist whatever this Court decides,

22   it's just I'm not sure based on plaintiff's own

23   argument doesn't make sense to have two trials in

24   two different courts in two different parts of the

25   country.

Page 49

1           MR. CHASE:  May I respond?

2           THE COURT:  We'll get there.  I guess it

3     depends on how sliced up the issues can be.  We

4     will get there.  We have a little bit of time.  Is

5     the claims that are brought here, the contractual

6     claims that are brought here, are they also

7     cross-claimed or counterclaimed in California?

8           My bottom line is what's the overlap of the

9     same two lawsuits?

10          MR. CHASE:  I can address that.  The

11    overlap is that there was not a contract claim

12    brought in California.

13          THE COURT:  It was an employment claim.

14          MR. CHASE:  Yes, but under the same

15    California labor law statute, it is the

16    counterclaim in this case.  There is no rhyme or

17    reason why two counts under the same California

18    labor law statute were brought and the counterclaim

19    brought in this case in 2016 and a month later

20    other California labor law counts were brought.

21          So a couple clarifications with regard to

22    the hearing.  Mr. Kalish wasn't in the courtroom.

23    He didn't appear telephonically in the courtroom he

24    wasn't there.  The tentative ruling was issued

25    before the hearing.

1        So what the court specifically held was I
2    want to wait and ask the parties to submit a joint
3    report on 11-28, on or before 11-28 after what Your
4    Honor rules upon with respect to the motions that
5    were referenced in that court.  That's what the
6    holding was of the court.  There hasn't been a
7    ruling by that court.
8        And I will say, because this transcript may
9    be put to that court.
10        THE COURT:  I hate to return the favor.
11        MR. CHASE:  Judge, the California court
12    stated that there was a belief that there cannot be
13    a transfer of a federal court case to a state court
14    case, which is correct, okay, because when we first
15    moved to dismiss or in the alternative to transfer,
16    it was in federal court, but the California court
17    also, there was some discussion that there was not
18    a belief that a federal court case and a state
19    court case, that the claims really applied when
20    there was two cases that were in different court
21    systems.
22        We have found case law in the intended
23    briefing, and that case law states that it doesn't
24    matter if it is a state law case and a federal
25    court case, the claim splitting doctrine applies

Page 51

1        across the board.

2                THE COURT:  I think you will find this

3        decision by Farmer drafted in the Fourth DCA that

4        basically says that a federal EEOC Title Seven

5        determination, is not res adjudicata and it is not

6        claim splitting to then bring a Chapter 760

7        specific resource commission in federal court after

8        the federal court, but we have not briefed on that

9        that day.

10               We are playing chicken because the federal

11       court wants to hear what I am going to do and I

12       want to hear what they are going to do.

13               MR. KALISH:  If you want, and this might be

14       the best scenario so in my report saying this Court

15       hasn't ruled or the Florida court hasn't ruled and

16       wait until the California court rules, and that

17       might advise this is Court how to do things.

18               You know, I am primarily stating my

19       understanding of the Florida --

20               THE COURT:  How tentative it was.  It is

21       not an order so it is not an order, but what I'm

22       trying to figure out a way to go forward and how

23       the California court and myself will communicate

24       will be through your reports or maybe an order if I

25       issue it.

Page 52

```
1              It seems to me that it hasn't gelled yet,
2       but the determination of whether she was an
3       employee of whether she was an independent
4       contractor is going to be threshold to that
5       California case.
6              If that's determined in the company's
7       favor, then, that's just going to evaporate that
8       case and then we all can be here.
9              MR. KALISH:  No, can I add on that?
10             THE COURT:  Please.
11             MR. KALISH:  There is not a statute to
12      prevent sexual harassment against employees in
13      California.  There is also a statute in California
14      that prevents sexual harassment against independent
15      contractors.  So either Ms. Vysata is an
16      independent contractor or an employee.  We have
17      filed lawsuits on both those California statutes.
18             So it does add certain damages possibly
19      that are different, but even if --
20             THE COURT:  I hear you.  I know where you
21      are going.  I know there is a fight over California
22      for more reasons than just convenience.  The laws
23      are different.  That's the key issue, too, because
24      I don't know the extent of her harassment when she
25      was here or there, but if she has got this
```

Page 53

1    relationship with a California-based company, she

2    has a right to sue them there.

3            And one of the California court's

4    consideration is going to be protecting their own

5    policies and their own rights.  You can't raise

6    similar statutory protections that court is going

7    to keep it in California.

8            MR. CHASE:  And Judge, there is no public

9    policy in California to extend California law to

10   non-citizens of California that holds the public

11   policy that does not extend it beyond California.

12           If Ms. Vysata wanted protection of

13   California laws, she could have stayed in

14   California but she didn't.  She is not an

15   independent contractor or an employee.  She is

16   self-employed.

17           THE COURT:  I think you got a difference of

18   --

19           MS. DUFFIE:  She also works for a

20   California employer.

21           THE COURT:  Or a California contractor.

22           MR. CHASE:  Or a client in California.

23           THE COURT:  All right.

24           MR. KALISH:  You can provide law that shows

25   that California law would apply if the conduct

Page 54

1        which is if Manowitz and ARA is based in

2        California, then absolutely California law applies.

3                THE COURT:  What I want to do, we're going

4        to need a lot more time, unfortunately.  I really

5        wish I could have gotten more of my arms around

6        this, the motion to dismiss and everything, maybe a

7        couple of those particular issues.

8                I do think it is well taken that a

9        transaction in Florida taken while she was in

10       Florida was not consistent with those laws.  I'm

11       not making a ruling on that, but there might be a

12       few of those that I can resolve first, but to me,

13       this forum non conveniens, I don't find it untimely

14       I don't know if I would call it excusable neglect,

15       but I think that interruption of how the case was

16       pending in Florida kind of, I don't even want to

17       call it tolling, but maybe if we considered it

18       tolling.

19               I think the timeliness issue, I may get

20       over, but what's smarter to do in the combination

21       of courts.  If the federal court is going to

22       proceed and keep the particular claims it has,

23       maybe some of the claims I have are more

24       appropriately transferred there.

25               Maybe if those these are both going to

Page 55

```
1         proceed simultaneously because of some Florida
2         interest, I find I don't know where I'm going.  But
3         if I find it is not appropriate to transfer the
4         entire case of California, maybe pieces of it so we
5         are not duplicating or splitting causes of action.
6              MR. CHASE:  I note that it is interesting
7         that the defendant is now adopting our argument
8         because what we have said is inconsistent and each
9         time we file a motion, they file one later.
10             Here has been the time line.  Florida,
11        Florida.  Then they file California.  We move to
12        dismiss California.  Another Florida.  Then the
13        discovery in Florida, discovery in Florida,
14        discovery in Florida.  Motion to compel evidence in
15        Florida.  Then remand.  And then only then is a
16        motion to dismiss in Florida.
17             So we have been consistent that it all
18        should be here.  They have been all over the map
19        and they would not even necessarily have personal
20        jurisdiction over Ms. Vysata in California.
21             We could not have filed the lawsuit there
22        initially because she is not a resident there and
23        she is a self-employed person.
24             MS. DUFFIE:  We agreed to submit to
25        jurisdiction, Your Honor.
```

Page 56

```
 1              MR. CHASE:  And so is Mr. Manowitz.
 2              THE COURT:  If she is making all these
 3      arguments and now told me she isn't, I have
 4      something serious to say.
 5              MR. CHASE:  What they intended to file in
 6      California, what they should have done is file a
 7      motion to dismiss on forum non conveniens on 560
 8      instead of filing a counterclaim here.
 9              THE COURT:  The one ruling I'm going to
10      make today is I don't think the 60-day rule is a
11      bar.  That does not mean that how far and how
12      affirmatively she went forward in this state court
13      is not going to weigh against transferring the
14      case.  I am hearing you.
15              She took very affirmative steps to litigate
16      here in the State of Florida.  The farther along
17      she let discovery go before filing and the more
18      machinations and use Florida laws would bode
19      against the transfer.
20              MR. CHASE:  And Judge, I can attach --
21              THE COURT:  I don't mean to use all of
22      those terms -- we're talking over him.
23              MR. KALISH:  And your Honor, that's fine
24      and I would like an opportunity to explain exactly
25      what happened.  That hasn't really been a focus of
```

Page 57

1        the briefing, but I would like to provide briefing

2        of exactly what happened in the Florida courts.

3                 THE COURT:  What I think I need to do.  I

4        have a ream of paper in front of me.  Let's do

5        this.  Let's get to this issue.  If I could you

6        take these and repackage them.  I'm not trying to

7        make extra work.

8                 Let's get additional briefs on the forum

9        non conveniens, because I would like to and how it

10       relates to the federal court.  How the federal

11       court is proceeding.  What this issue is, what

12       decisions that judge makes is going to make a

13       difference.

14                MR. KALISH:  Yes, sir.

15                MR. CHASE:  Judge, could we move to the

16       motion to dismiss the complaint.

17                THE COURT:  I'm going to hold off on that.

18       Sorry.  Yeah, I have got three people waiting on

19       hearings.

20                MR. CHASE:  I just don't want the time here

21       being used against the plaintiffs in California of,

22       judge the judge doesn't deny the motions to dismiss

23       and that being used as a sword in California.

24                THE COURT:  No, I have to take the

25       transcript.  I merely didn't reach them strictly as

Page 58

1        a result of time and resources.  It is no

2        commentary on the merit or whether I think they

3        should be resolved here.

4            I think I have to have a better conceptual

5        understanding of the relationship between the two

6        cases what will happen if they proceed forward

7        separately.

8            MR. CHASE:  Would it be more helpful for

9        the Court for us to do a two or three-page memo or

10       a longer one with all the attachments --

11           THE COURT:  The shorter the better.  Give

12       me two memos and if you think that something is

13       misstated in those memos, do a response to each

14       others memos.

15           MR. KALISH:  Okay.  We can do that and I

16       can work with opposing counsel and we can maybe

17       special set this for another date.

18           THE COURT:  I will time it as best as I

19       can.

20           MR. KALISH:  I understand.

21           THE COURT:  What I will end up doing is get

22       you all fit in.  But probably have to be on call

23       for a hearing and I don't mind the telephonic

24       appearances.  I have two or three trial weeks in

25       December but I get 24, 48 hours notice.  I can

Page 59

```
 1        leave, obviously if you guys are busy, I'm not
 2        going to hold it against you if you couldn't make
 3        it, but I'm trying to foreshadow and get your
 4        papers to me and then within, by the end of the
 5        month, I know with the holiday and everything and
 6        what we will do is revisit.
 7             Why don't we have a conference call just
 8        for scheduling purposes.  I do those from chambers.
 9        I have all counsel get together and send me a call
10        in number and we won't talk about merits, just
11        coordination and you guys can inform me about
12        things, the scheduling of the California court.
13             MS. DUFFIE:  We could call your assistant
14        to set that up.
15             THE COURT:  Yeah.
16             MR. CHASE:  Okay.
17             THE COURT:  When you guys are ready.
18             MR. KALISH:  Thank you very kindly.
19             THE COURT:  When you have done your briefs
20        in this, summary memos, bullet points are great
21        with me.  If they are not disputed points, if you
22        guys are agreement on points --
23             MR. CHASE:  With a time frame.
24             THE COURT:  Yeah, I know.  And if
25        California is going to go forward with the case,
```

Page 60

1          regardless of what I do, I need to know the scope

2          of it.  That may help me define the scope of the

3          case here.

4               Excuse me that I'm not more knowledgable to

5          give you an example, but there may be part of this

6          case that would be better in California matched up

7          to whatever part of the case is there.  To me, a

8          brokerage sale is on a Florida sale of property, I

9          have a stronger interest from the policy side of

10         enforcing law on the Florida residency contractor.

11              It may even be, I don't want to be accused

12         of splitting causes of action, but maybe not all of

13         this is proper in California, either.  Sorry I

14         couldn't do more for you guys today.

15              MR. KALISH:  Thank you for your time.

16              MR. CHASE:  Thank you for your time.

17              THE COURT:  Happy Thanksgiving everyone.

18                   - - -

19              (Whereupon the proceedings were concluded

20         at 2:50 p.m.)

21

22

23

24

25

Page 61

1   STATE OF FLORIDA        )

2

3   COUNTY OF PALM BEACH       )

4

5

6            I, Rick White, C.S.R., and R.P.R., hereby

7   certify that I was authorized and did

8   stenographically report the foregoing proceedings

9   and that this transcript is a true record of the

10  proceedings before the Court.

11

12           I further certify that I am not a

13  relative, employee, attorney, or counsel for any of

14  the parties nor am I a relative or employee of any

15  of the parties; attorney of counsel connected with

16  the action, nor am I financially interested in the

17  action.

18

19           DATED this 29th day of November, 2018.
             My Commission #FF89792

20           Expires July 12, 2019

21

22

             Rick White, R.P.R., C.S.R.

23

24

25

[008029 - agreement]                                                    Page 62

**0**

**008029**  1:4

**1**

**1**  8:20 30:17
**1.0062**  13:23
**1.061**  28:20
**1.351**  19:9
**1.60**  30:17
**1.601**  28:3
**100**  43:25
**104**  2:8
**1099**  10:24
**1099s**  11:3
**11**  17:18
**11-28**  50:3,3
**11th**  16:14
**12**  15:19 29:23,24
  31:10,17,20,24
  32:2,4 39:1,2 40:14
  61:20
**13**  12:14
**14,344**  17:17
**144**  13:20 17:13
**145**  23:25
**15**  10:22
**1509**  2:3
**15th**  1:1
**16**  12:21 13:21
  28:10
**16th**  2:3
**1758**  21:14
**19**  1:17
**1994**  8:1
**1:30**  1:18

**2**

**2**  10:24
**20**  45:14
**20036**  2:4
**2007**  8:19

**201**  11:6
**2011**  7:25 8:7 36:9
**2012**  8:10 36:6
**2014**  10:8,15 11:17
**2015**  1:4 8:19 9:11
  9:16,18,19 12:1
  26:20 36:1
**2016**  49:19
**2017**  11:17 12:6
  15:5,9
**2018**  1:17 11:17
  15:5,10 36:9 46:13
  61:19
**2019**  61:20
**205**  1:19
**23**  18:25
**24**  58:25
**25**  6:21
**250**  2:8
**28**  12:14
**2822**  61:22
**29th**  61:19
**2:50**  1:18 60:20
**2s**  11:3

**3**

**3**  40:14
**3,000**  11:7 15:24
**3-6-16**  31:15
**33401**  1:20
**33458**  2:9

**4**

**40**  11:21
**420-1728**  11:6
**475**  9:4 24:24 25:15
  25:22 26:8,9
**48**  58:25

**5**

**5-16**  31:16
**5-9**  31:15

**50**  1:4
**500**  2:3
**54**  12:16 28:9 39:16
**560**  56:7
**5th**  6:25

**6**

**6-12**  16:4
**60**  13:24 14:7 27:22
  28:3 30:16 37:21
  38:22,24 39:8,14
  39:15 40:9,21
  56:10

**7**

**760**  51:6

**8**

**8-1**  13:20
**8-7**  13:20 17:13
**80**  42:23

**9**

**9**  12:16
**9th**  16:14

**a**

abeyance  33:24
  34:8
able  12:11 42:15,17
  42:20 44:14
absolutely  16:2
  21:25 43:25 45:4
  54:2
accused  60:11
act  19:11 46:13
action  16:9,20
  38:17,21,23 41:21
  43:17 48:11 55:5
  60:12 61:16,17
actions  26:13
activities  9:6 24:9
activity  26:19

acts  21:15
actual  11:1
add  41:15 47:4
  52:9,18
additional  57:8
address  36:11
  49:10
adequate  37:14
adhere  36:15
adjudicata  16:13
  19:19 21:21 48:4
  51:5
administrative
  22:2
adopting  55:7
aduffie  2:10
advantage  44:19
advertisement  8:8
advise  51:17
affect  34:11
affidavit  10:6
  46:23
affirmative  32:25
  32:25 56:15
affirmatively  40:22
  46:22 56:12
afternoon  3:9
agent  8:16,18 22:19
ago  18:21 31:21
agree  6:7 16:21,22
  19:13 40:2
agreed  11:15 12:7
  55:24
agreement  5:25
  8:11,15,23,23,24
  9:1,2,3,4,15 12:25
  13:1,2,2 16:1 20:3
  22:15 23:23,24
  24:2,5,11 25:8
  36:12 59:22

**agrees**  24:8
**alice**  1:9 3:6,16
**allegation**  20:14 22:9
**alleged**  9:18 20:24
**allison**  2:9 3:14
**allow**  27:9
**allows**  30:21 42:11
**alternative**  28:22 50:15
**ambit**  25:15
**amenable**  21:23
**amend**  15:20
**amended**  5:20 13:5 17:9 18:9,13 30:6
**amendment**  27:8
**american**  29:18
**amount**  8:6 32:15
**amounts**  11:21
**analog**  31:20
**analyst**  36:10
**angeles**  15:22 42:3
**answer**  30:6,8 41:3
**anyway**  23:22
**apartment**  1:6 3:10 8:1 10:10,11,13,25 11:2,14 12:14 15:21 17:10 21:6 22:17,20 42:8 46:4
**apparently**  22:16
**appear**  49:23
**appearances**  2:1 3:8 58:24
**applied**  50:19
**applies**  24:24 25:1 25:5 27:13 30:22 34:10,12,14 43:7 50:25 54:2
**apply**  25:20,25 34:16 35:21 39:7 44:1 45:1 53:25

**approach**  4:13 29:19
**appropriate**  38:14 39:1,12 43:2 55:3
**appropriately**  54:24
**ara**  8:2 21:12 45:8 48:18 54:1
**ara's**  47:21
**argue**  5:25 21:19 21:20 35:7 40:5 44:16,18
**arguing**  34:14
**argument**  14:8 22:14 34:13 48:23 55:7
**arguments**  19:15 19:21 37:1,2 47:14 56:3
**arm's**  11:14
**arms**  54:5
**asked**  18:21
**asserted**  26:23
**assertion**  22:6 26:24
**assignment**  9:7
**assistance**  3:10
**assistant**  59:13
**associates**  1:6 2:8 3:15 8:2 10:10,11 10:13,25 11:2,14 12:14 15:22 17:11 21:7 22:17,20 42:9 46:4
**assume**  26:6
**attach**  56:20
**attached**  47:18
**attachments**  58:10
**attempts**  26:5
**attended**  29:2

**attests**  10:8
**attorney**  37:16 61:13,15
**attorneys**  21:1,2 46:7,10,11
**attraction**  4:20
**audrey**  10:6 41:25
**august**  28:10
**authorized**  61:7
**available**  19:14,17
**aware**  14:5 19:5 25:22

**b**

**b**  39:2 40:14
**back**  4:1 18:22 28:11,13 29:11 33:14 37:6,6
**background**  8:11
**bailiff**  3:2
**balancing**  41:11
**bar**  56:11
**based**  16:12 28:9 36:13 48:22 53:1 54:1
**basic**  38:1
**basically**  4:3 6:2 32:23 42:3 43:17 51:4
**basics**  5:11
**baskets**  16:17
**beach**  1:3,19,20 6:20 29:13 46:3 61:3
**began**  15:9 36:3
**beginning**  36:6
**behalf**  2:2,7
**behavior**  40:22
**belief**  50:12,18
**believe**  18:3,12 28:8 39:25 43:6 47:9

**benefit**  13:19 22:1 22:2
**best**  4:12 34:11 35:17 51:14 58:18
**better**  39:5 58:4,11 60:6
**beyond**  53:11
**bit**  47:5 49:4
**board**  16:14 30:16 51:1
**boat**  3:20
**boca**  15:4 29:15 45:22
**bode**  56:18
**bottom**  49:8
**bought**  9:14
**boulevard**  2:8
**breach**  12:24 13:2 15:14 22:25 23:3,6 24:12
**briefed**  51:8
**briefing**  50:23 57:1 57:1
**briefly**  36:11
**briefs**  57:8 59:19
**bring**  5:12 27:5 39:2,3 42:11,17 46:17 51:6
**bringing**  20:10
**broker**  8:17 9:5,24 10:1 24:20,22 25:13,17,19 26:1,4 26:7,12,16,21,22
**brokerage**  8:22,22 8:23,24,25 9:1,3,6 13:1 16:1 20:3 23:24 24:9 25:6 35:5,21,24 60:8
**brokers**  26:8
**brother**  45:23

[brought - communications]                                                    Page 64

brought   13:3,24
  21:24 27:3,10 43:4
  49:5,6,12,18,19,20
bullet   59:20
bundle   41:9
business   8:5,6
  11:13 25:10,13
  35:21 43:11 46:5
businesses   10:19
  10:21 46:25
busy   59:1
buyer   9:25

c

c   3:1
c.s.r.   1:24 61:6,22
calendar   33:8
  39:14
california   7:20
  8:13,14,18 9:8,10
  9:10,12 12:4,5
  15:14 16:9,11
  17:15,20 18:17,20
  18:21 20:7,11,16
  20:19,23 21:1,22
  23:4,12 25:9 34:12
  41:16,18,20,24
  42:1,9 43:2 45:7
  46:1,6,9 47:10,13
  47:14,17,20,24
  48:7,8,10,19,21
  49:7,12,15,17,20
  50:11,16 51:16,23
  52:5,13,13,17,21
  53:1,3,7,9,9,10,11
  53:13,14,20,21,22
  53:25 54:2,2 55:4
  55:11,12,20 56:6
  57:21,23 59:12,25
  60:6,13
call   8:2 54:14,17
  58:22 59:7,9,13

called   8:10 9:1
  16:24
calls   9:5
captive   36:23
care   5:7
cars   11:11
case   1:4 4:24 9:11
  13:23,24 14:5
  15:13,14,21 16:6
  17:4,6,14,15,16,23
  19:6,7 20:2,6,17
  21:3 22:3 23:20
  25:23 26:2,3,4,7,11
  27:17 28:7 29:11
  30:18,20,20,25
  31:3 32:7 33:19
  34:1 35:15 37:11
  39:13 41:18 42:16
  42:25 44:7,7 47:15
  48:14,18,20 49:16
  49:19 50:13,14,18
  50:19,22,23,24,25
  52:5,8 54:15 55:4
  56:14 59:25 60:3,6
  60:7
cases   3:24 14:2
  25:23 27:15 29:17
  37:12 50:20 58:6
causes   55:5 60:12
cc   1:4
centers   12:2
central   2:8
certain   52:18
certainly   26:18
certify   61:7,12
cetera   44:21
challenges   40:16
chambers   59:8
chapter   9:4 23:25
  26:8 51:6

characterize   35:22
charge   10:2 26:5
charging   24:22
chase   2:3,4 3:9,9
  4:4,7,14,24 5:3,13
  5:16 6:6,13,24 7:2
  7:7,12,16,22,25 8:4
  8:14 9:9,17,22 13:8
  13:11 14:5,10,16
  14:23 16:4,22 17:6
  20:9,20 21:25 22:2
  22:17,23 23:11,20
  24:18 25:4,12,22
  26:15 29:3,16,21
  30:4 31:8,13 32:1
  32:11,14 33:3,22
  34:6 36:23 37:5
  40:2,11,17 41:5,18
  43:4,25 44:24 45:4
  47:4,12 48:6 49:1
  49:10,14 50:11
  53:8,22 55:6 56:1,5
  56:20 57:15,20
  58:8 59:16,23
  60:16
chaselaw.com   2:5
chicken   51:10
choose   48:8
circuit   1:1,2 16:14
  16:14
circumstances   7:17
cite   27:17
cited   5:1 16:13
  25:24 30:18
citizens   53:10
claim   12:24 17:9
  18:15 24:12 35:9
  35:10,11 38:11
  49:11,13 50:25
  51:6

claimants   16:12
claimed   49:7
claiming   15:24
claims   12:10,22,23
  15:18,24 16:16,19
  16:23 18:14 20:2
  21:21,23 23:21
  27:2,9 42:20 45:16
  49:5,6 50:19 54:22
  54:23
clarification   20:14
clarifications   49:21
clarify   23:13
classification   36:13
  36:16
clear   7:10 13:23,25
  30:15 37:20
clearly   12:2
client   11:15 21:23
  42:5 53:22
clock   31:5
close   5:24
coast   21:2,3 46:10
  46:11
collect   26:17,22
  35:1
combination   54:20
come   12:3,4
commentary   58:2
commercial   11:22
commission   9:5
  10:3,4 15:13 25:2
  26:23 35:1 51:7
  61:19
commissions   26:17
  35:12
common   22:4,7
communicate
  51:23
communications
  22:8

[company - court]

company  7:25
    20:15,16,17 21:12
    22:10,18,21 53:1
company's  52:6
compel  32:17 33:4
    42:20 55:14
compelling  6:3
competing  12:10
complaint  5:20
    12:16 13:5 18:10
    18:13 20:22,25
    30:1,6 31:14 41:5
    45:25 57:16
completely  9:20
comprehensive
    18:13
compulsory  19:13
    19:16
conceptual  58:4
concerned  4:22
concisely  33:21
concluded  60:19
conduct  8:5 11:13
    53:25
conducted  27:5
conducting  25:10
    35:19
conference  59:7
conferring  5:15
confers  5:23
connected  46:5
    61:15
connecticut  11:8
connections  46:2
consented  21:7
consider  6:10 14:3
    30:22 39:22 44:4
consideration  53:4
considered  44:22
    54:17

consistent  54:10
    55:17
consulting  8:10,15
    12:25 22:15
contend  12:25
contended  16:18
context  30:23
continued  15:10
contract  12:24,25
    15:15,15 20:3
    22:21,22,24,25,25
    23:1,2,4 24:12 44:5
    49:11
contractor  11:25
    34:3 52:4,16 53:15
    53:21 60:10
contractors  52:15
contractual  49:5
contrast  10:25
controlled  37:2
convenience  22:3
    40:23 52:22
conveniens  4:8,19
    5:21 6:12,13 12:20
    13:22 14:9,13,17
    18:6 19:20 27:17
    27:24 28:10 30:23
    31:18,24 32:3,4,18
    37:11 38:12,16
    40:16 41:7,10
    48:12 54:13 56:7
    57:9
convenient  32:19
    40:24 46:11 47:6
    48:16,18
converted  7:3
coordination  59:11
core  29:19
corporate  44:4
corporation  29:18

correct  4:4 6:6,24
    7:12 9:17 31:7
    34:21 36:22 39:21
    50:14
costa  29:19
counsel  3:4,15
    21:13 29:17 31:22
    37:24 58:16 59:9
    61:13,15
counsel's  36:11
count  12:22 15:16
    15:17 16:5,7
counter  37:1
counterclaim  12:22
    15:16,17,20 16:6,7
    27:9,25 30:5 31:14
    31:16 40:18 41:4
    49:16,18 56:8
counterclaimant
    17:8
counterclaimed
    45:2 49:7
counterclaims  30:2
    30:8
counterdefendant's
    6:21
country  48:25
counts  16:7,8 35:14
    49:17,20
county  1:3,19 15:9
    17:20 29:14 46:3
    61:3
couple  29:16 49:21
    54:7
court  1:1 3:2,4,7,13
    3:17 4:5,8,11,19,22
    5:1,4,8,14,17,22
    6:2,7,9,10,15,20
    7:1,1,2,3,4,8,9,10
    7:13,18,23 8:3,12
    9:7,15,21 10:6

    12:13,17 13:3,3,4,6
    13:6,7,8,9,10 14:1
    14:8,13,16,19
    15:23 16:3,14,20
    16:21,23 17:2,4
    18:11,19,21 19:12
    19:20,25 20:10
    21:8,9,19 22:1,13
    22:19 23:7,18
    24:16 25:3,7,16
    26:11 27:3,6,6,11
    27:23 28:1,5,6,8,11
    28:14,15,17,19,25
    29:1,1,3,8,13,20,22
    29:25 30:2,2,9,9,20
    30:22,24 31:4,5,6,9
    31:11,15,19,22,24
    32:10,13,15,22,23
    33:10,24 34:2,5,9
    34:10,19,22 35:8
    35:11,14 36:2,5,18
    36:20,25 37:9 38:2
    38:4,5,9,10,13,17
    38:18,19,21,23,25
    39:6,9,11,15,16,19
    39:22,23 40:6,10
    40:15,20 41:8,21
    42:9,18 43:9,11,15
    43:21 44:3 45:3
    47:12,13,15,17,23
    48:8,10,21 49:2,13
    50:1,5,6,7,9,10,11
    50:13,13,16,16,18
    50:19,20,25 51:2,7
    51:8,11,14,15,16
    51:17,20,23 52:10
    52:20 53:6,17,21
    53:23 54:3,21 56:2
    56:9,12,21 57:3,10
    57:11,17,24 58:9
    58:11,18,21 59:12

[court - duffie]

59:15,17,19,24
  60:17 61:10
**court's** 53:3
**courthouse** 1:19
**courtroom** 49:22
  49:23
**courts** 16:15 27:24
  48:2,7,24 54:21
  57:2
**credible** 22:6
**cross** 49:7
**cruises** 29:19
**crystal** 13:23,25
  30:15 37:20
**cure** 44:9,11,16,17
**cured** 43:24 44:1
  45:4
**current** 6:11
**cut** 24:3

**d**

**d** 3:1 28:3
**dakota** 26:6
**damages** 52:18
**dan** 3:5 37:23
**dandy** 48:9
**daniel** 2:12
**date** 1:17 39:16
  58:17
**dated** 61:19
**dating** 10:21
**day** 12:21 14:7 28:3
  30:16 35:16 37:21
  39:14,25 40:9,21
  43:23 51:9 56:10
  61:19
**days** 12:16 13:20
  13:24 17:13 27:22
  28:9,11,12,14
  33:19 38:22,24
  39:8,15,17,19

**dc** 2:4
**dca** 30:15,20 32:7
  37:11 51:3
**deadline** 31:10,23
  31:25
**deal** 25:17,20 29:20
  45:24
**dealing** 35:15
**december** 58:25
**decide** 13:4 38:14
**decided** 37:19
**decides** 48:21
**decision** 37:18 51:3
**decisions** 57:12
**declaration** 42:1
**declared** 10:16
  15:3 46:20,21
**default** 38:1
**defect** 30:13 43:22
**defendant** 1:10 2:7
  7:20 8:7 25:24 55:7
**defendant's** 6:14
**defendants** 19:5
**defense** 28:1
**defenses** 32:25
  34:25
**define** 60:2
**demand** 24:12
**denied** 18:12 30:11
**deny** 47:21 57:22
**department** 24:7
**depends** 49:3
**depose** 42:3,15
**depositions** 17:19
**describe** 42:4,6
**desperately** 46:16
**detail** 45:17
**determination** 51:5
  52:2
**determinative**
  36:20,21

**determine** 29:4
**determined** 13:14
  52:6
**determining** 16:23
**devoted** 45:25
**difference** 53:17
  57:13
**different** 10:18,20
  11:9,11 16:16
  17:18 18:8,25
  41:12 48:1,2,3,3,4
  48:4,24,24 50:20
  52:19,23
**differentiation**
  8:25
**dinner** 45:17
**directly** 37:12,13
**disagree** 41:19 47:7
**discovery** 17:17,19
  17:20,21,23 19:11
  21:15 27:5 32:15
  32:16 33:3 40:19
  46:13 48:3 55:13
  55:13,14 56:17
**discreet** 34:8 37:9
**discussed** 43:3
  45:14
**discussion** 12:9
  19:3 21:13 50:17
**discussions** 18:20
  45:21
**dismiss** 4:6 5:19,21
  16:12 18:4,5,9 28:9
  29:12,24 31:17
  32:2,3,17 33:25
  37:10 38:11,12,16
  41:3,6,20 43:20
  47:21 50:15 54:6
  55:12,16 56:7
  57:16,22

**dismissal** 18:15
  35:9,10
**dismissed** 47:15
**dismissing** 48:10
**dispositive** 18:2
**dispute** 7:14 12:1,2
  15:6,8 22:21 24:21
**disputed** 15:12
  59:21
**disputes** 23:1 33:15
  41:22
**district** 6:20 12:17
  12:18 13:25 30:9
  30:20
**dixie** 1:19
**docket** 33:7
**doctrine** 50:25
**document** 8:20
**documents** 6:19
  17:17 21:12,16
  22:14
**doing** 25:18 28:25
  58:21
**domain** 10:23
**domestication**
  19:10
**dovetails** 14:10
**drafted** 8:10,15
  22:24 51:3
**drags** 33:16
**dropped** 40:11
**duffie** 2:9 3:14,14
  4:10,16,21 5:6 7:5
  19:18,24 23:13,19
  28:2,7,12,20 29:2
  29:10,15 30:18
  31:2,7 33:1,5 34:15
  34:21 35:6,10,13
  35:25 36:3,8,19,21
  37:24 39:18,21,25
  53:19 55:24 59:13

duplicating   55:5
duplicative   17:22

**e**

e   3:1,1
earlier   36:4
earliest   40:23
   43:18 44:23
early   40:1
eeoc   51:4
effectuated   13:15
   13:21 29:6
either   52:15 60:13
emphasized   48:6
employed   10:17
   11:13,16 46:21
   47:1 53:16 55:23
employee   10:9,12
   11:20 15:24 16:2
   20:11,15 26:24
   34:3 35:23 42:2
   52:3,16 53:15
   61:13,14
employees   11:1,1,2
   36:14 52:12
employer   11:20
   36:17 53:20
employment   20:6
   36:4,12 49:13
ended   39:14
enforce   34:22
enforceable   23:23
enforcing   60:10
engaged   32:14
entire   55:4
enure   13:18
equation   46:7
equivalent   28:4
error   37:16,17
esq   2:4,9,12
essentially   47:22

estate   8:16,17,17
   8:18 15:8,11 20:2
   24:7 25:6 26:4
et   44:21
ethical   12:23
europe   11:23
evaporate   52:7
evidence   19:4 21:5
   21:11,13 55:14
evidentiary   33:8
   42:11
exact   9:23
exactly   41:2 42:6
   56:24 57:2
example   60:5
exception   30:14
   37:22
exchanged   17:16
excusable   14:2,3,6
   28:24 30:22,24,25
   32:8 37:15 54:14
excuse   27:18 60:4
executed   9:9
exhibit   8:20 10:5
exhibits   47:19
exist   48:21
existed   8:1
existence   23:1,2
expired   31:21
expires   61:20
explain   56:24
extend   14:6 27:18
   53:9,11
extent   19:3 52:24
extra   57:7
extraordinarily
   18:13

**f**

f.c.r.   1:24
face   23:23

fact   10:11 16:6
   25:9 43:5 46:23
factor   40:20
factors   41:9
facts   18:14 22:5,7
factual   7:17 36:25
   41:22
fails   18:8
failure   38:11
fairness   44:21
falls   34:24
far   7:15 56:11
farmer   51:3
farther   56:16
fast   37:21
favor   50:10 52:7
february   36:9
federal   6:9 7:1,2
   11:4 13:6,8 27:23
   28:1,4,8,14,17 29:1
   29:1,22 30:1,2,9
   31:4,9,15,19,24
   32:15,23 34:4 38:4
   38:9,18,22,25 39:9
   39:11,23 40:10
   41:20 47:14,17,23
   48:10 50:13,16,18
   50:24 51:4,7,8,10
   54:21 57:10,10
federalism   21:17
fee   8:22
feel   3:19
fees   6:3 26:5
felt   29:10
feverish   32:15
ff89792   61:19
fiction   45:14
fight   52:21
figure   3:22 6:18
   33:20 51:22

file   16:24,25 17:10
   17:10,12 19:2 38:6
   38:15,22,23 39:8
   41:4,6 43:5,9,10,17
   43:23 55:9,9,11
   56:5,6
filed   4:16 5:18,19
   6:25 7:4,5,8,9
   12:13,15,18,19,21
   13:22 14:25 15:13
   15:19,21 16:3,4,5,9
   20:25 28:10,16,22
   28:23 30:1,2,5,6,8
   31:13,16 40:9,13
   40:17 41:2,3 42:7
   43:14,16 44:19,20
   44:22 52:17 55:21
files   36:13
filing   6:8 7:6 31:23
   39:14 43:24 56:8
   56:17
financially   61:16
find   44:7,14 51:2
   54:13 55:2,3
finds   28:23
fine   56:23
firm   36:12
first   5:5 14:23,25
   16:24,25 17:2,9,10
   18:9,12 43:5,15,16
   44:15,19 50:4
   54:12
fit   58:22
five   11:19 33:19
fl   1:20
florida   1:3 2:9 7:13
   8:6,19 9:4,13 11:8
   12:18,22 15:1,2,3,7
   15:8,9,18 19:2,8
   20:22 23:5,10,16
   23:17,25 24:7,10

24:21,21,22,24
25:5,6,13,14,14,16
25:18 26:1,4,8,9,12
26:14,16,18 28:3
29:14 30:20 32:8
33:14 34:16,17,24
34:25 35:2,3,5,6,19
35:23 36:1,6 37:19
38:9,10,16,18,21
38:22,25 39:6,7,15
41:2 42:16,18,19
42:21,25 43:5,9,10
43:12 44:13,14
45:8,15,19,19,20
46:3,5 47:9,16
48:15 51:15,19
54:9,10,16 55:1,10
55:11,12,13,13,14
55:15,16 56:16,18
57:2 60:8,10 61:1
**flowers**  45:21
**fly**  25:17 42:21
**focus**  47:5,12 56:25
**focusing**  27:13
**follow**  19:10
**footnote**  40:12
**foreclosure**  43:22
**foregoing**  61:8
**foreshadow**  59:3
**forgive**  40:6
**forth**  4:1 20:21
**forum**  4:8,19 5:21
6:11,13 13:22 14:9
14:13,17 18:5
19:20 27:16,23
28:10 30:23 31:17
31:23 32:2,4,18
37:11 38:12,16
41:7,10,12 47:6
48:12 54:13 56:7
57:8

**forward**  12:12 15:5
20:19 21:20 32:24
34:1 37:18 40:18
51:22 56:12 58:6
59:25
**found**  44:9 50:22
**fountainbleu**  45:18
**four**  7:11 11:9,11
**fourth**  13:25 30:15
32:7 37:11 51:3
**frame**  15:1 59:23
**frankly**  12:4 21:1
**front**  57:4
**frown**  16:15
**full**  10:2,4 16:5
37:19 40:18
**function**  9:3
**functions**  8:24
**fundamental**  18:14
**further**  61:12
**future**  24:4

**g**

**g**  3:1 13:23 30:17
**gadsden**  15:9
**games**  13:13
**gauge**  32:23
**gelled**  52:1
**getting**  3:17 47:4
**giant**  45:24
**give**  7:23 58:11
60:5
**global**  30:18
**go**  7:15 9:21 18:11
20:18 21:20 33:7
51:22 56:17 59:25
**goes**  41:9
**going**  5:10 19:12,25
20:4,7 21:19,20
33:14,18,19 38:2,3
39:10 41:20,21
42:22 47:8,10,20

47:25 48:1,2 51:11
51:12 52:4,7,21
53:4,6 54:3,21,25
55:2 56:9,13 57:12
57:17 59:2,25
**good**  3:9 48:9
**gotten**  54:5
**govern**  15:1,2
**governed**  23:5
26:14 29:23
**governing**  26:10
**governs**  7:13 33:15
**grant**  14:16
**granted**  18:16
28:14 40:4
**gravity**  46:6
**great**  3:13 59:20
**grounds**  18:8
**guess**  7:19 26:25
49:2
**guys**  3:21 5:12 6:7
6:8 32:24 59:1,11
59:17,22 60:14

**h**

**half**  35:16
**handle**  41:1
**happen**  3:23 58:6
**happened**  9:12,19
11:5 20:25 56:25
57:2
**happening**  18:17
18:18
**happy**  5:13 26:3
46:17 60:17
**harassment**  15:23
20:6 27:2 41:17
42:10,12,19,25
45:16 52:12,14,24
**hard**  37:21
**hate**  50:10

**head**  4:11
**hear**  16:23 51:11
51:12 52:20
**hearing**  1:15 29:2,3
33:8 49:22,25
56:14 58:23
**hearings**  5:10
57:19
**held**  14:6 25:23
26:4,7 32:8 50:1
**help**  60:2
**helpful**  58:8
**highway**  1:19
**hold**  33:23 34:7
57:17 59:2
**holding**  30:9 50:6
**holds**  53:10
**holiday**  59:5
**home**  15:4 45:22
**homestead**  15:4
**honor**  3:5 4:10,24
5:6 6:24 7:16 10:17
12:24 23:13 25:12
27:2 28:2,23 29:16
33:5,23 34:15
35:25 36:10 37:5
37:23 39:18 43:3
44:6 47:3,15 50:4
55:25 56:23
**honorable**  1:15 3:3
**hours**  11:22 58:25
**huge**  45:24
**human**  41:22,23

**i**

**idea**  38:1
**identical**  47:14
**illegal**  24:6
**imagine**  25:12 46:8
46:8
**impediment**  27:22

**important** 24:1
  47:11
**importantly** 12:23
**impression** 44:15
**improper** 30:13
**inclination** 48:9
**inclined** 14:19
**including** 8:5 15:16
  15:17
**inconsistent** 55:8
**inconvenience** 21:4
**inconvenient** 32:19
  32:21 46:12 48:14
**incorporated** 3:11
**incredibly** 20:7
**independent** 11:25
  34:2 52:3,14,16
  53:15
**index** 6:18
**indicate** 10:9
**indicated** 10:12
**individual** 22:22,23
  36:24 44:1,4 45:1
**individually** 22:16
**inform** 18:19 59:11
**information** 33:12
  33:12
**initial** 7:5 13:14
  20:2
**initially** 55:22
**instances** 42:12
**intended** 39:9
  50:22 56:5
**intensive** 20:8
**intent** 19:8
**interest** 34:24 55:2
  60:9
**interested** 61:16
**interesting** 32:5
  55:6

**intern** 8:9 36:7
**internship** 8:8
**interruption** 54:15
**interstate** 21:15
  46:13
**interwoven** 34:10
**investigation** 24:8
**irrelevant** 9:20
**issue** 4:23 21:18
  27:20,23 34:17
  40:8 44:25 51:25
  52:23 54:19 57:5
  57:11
**issued** 49:24
**issues** 3:25 14:1
  27:12 47:25 49:3
  54:7

**j**

**james** 1:15 3:3
**joint** 50:2
**judge** 4:4,7,14 6:6
  7:12 13:13,16 17:6
  18:16 20:9 21:25
  23:20 31:8,13
  32:12 36:23 40:3
  50:11 53:8 56:20
  57:12,15,22,22
**judgment** 4:5,17
  5:5,18 6:4,22,23
  8:21 12:19,20
  14:12,15,18,24
  33:24 37:7
**judicial** 1:2
**july** 6:25 61:20
**june** 15:19
**jupiter** 2:9
**jurisdiction** 15:7
  17:1 21:8,9,10
  25:14 31:3,9 45:8
  55:20,25

**jury** 42:19
**justifiable** 27:18

**k**

**kalish** 2:12 3:5,5
  37:23,24 41:15
  44:6 46:8 47:3
  49:22 51:13 52:9
  52:11 53:24 56:23
  57:14 58:15,20
  59:18 60:15
**kchase** 2:5
**keep** 11:11 27:6
  53:7 54:22
**kenneth** 2:4 3:9
**kept** 3:17
**key** 10:5 23:20
  52:23
**kind** 14:8,10 22:10
  22:11 54:16
**kindly** 59:19
**know** 6:10 30:4
  31:11 33:7,18
  34:11 35:4,14 36:6
  36:25 37:25,25
  38:3,15 39:5 40:2
  41:8,11,16 44:10
  45:10 48:13,16
  51:18 52:20,21,24
  54:14 55:2 59:5,24
  60:1
**knowledgable** 60:4
**knowledge** 45:13
**knows** 11:10

**l**

**labor** 16:8 49:15,18
  49:20
**laid** 35:15
**late** 43:13,18 44:22
**law** 2:3 4:24 7:13
  9:4 12:22,23 15:1,2

16:8 17:4 18:6 19:6
  19:7 22:3 23:4,5,5
  23:25 24:13,15
  25:1,5,20,25 26:2,3
  27:13 29:14 32:7
  33:14,15 34:10,12
  34:12,14,16,25
  40:4 44:7,7,13,14
  49:15,18,20 50:22
  50:23,24 53:9,24
  53:25 54:2 60:10
**laws** 35:20,24
  52:22 53:13 54:10
  56:18
**lawsuit** 12:13 15:21
  16:11 21:24 41:21
  42:8,25 43:9,10
  44:19 47:23 55:21
**lawsuits** 36:13 49:9
  52:17
**leave** 59:1
**left** 18:16
**legal** 24:1,2 43:8
**legally** 24:5 43:16
  43:18 44:22
**leisurely** 35:17
**length** 11:14
**license** 11:23 25:19
**licensed** 8:17 24:20
  25:13,16,18 26:20
  26:22
**lied** 31:3 35:20
**limit** 38:25 40:10
  40:21
**line** 37:12 49:8
  55:10
**lined** 33:13
**lines** 21:17
**list** 3:24
**lists** 47:19

**literally**  9:23
**litigate**  18:24 27:7
  56:15
**litigated**  16:19
  18:23 34:11
**litigating**  40:22
**litigation**  12:12
  32:20 41:17
**little**  47:5 49:4
**live**  2:10 21:1 42:18
**lives**  21:4 25:10
  42:1
**living**  8:13,14 35:2
**llc**  2:3
**load**  3:20
**local**  3:15 37:24
**located**  23:15,16
  24:23,25 26:1
**long**  11:15
**longer**  58:10
**look**  26:3 43:15
**looked**  25:23 30:25
  44:13
**looking**  15:5 34:3
**looks**  8:22
**loose**  37:21
**los**  15:22 42:2
**loses**  34:23
**lot**  4:1 5:1 33:6
  37:8 38:6 41:16
  43:1,4 47:8,10 54:4
**louisiana**  23:11,18
  24:17 25:1,3,17,18
  25:20,20

**m**

**machinations**
  56:18
**making**  20:13
  54:11 56:2
**manner**  9:24 10:1
  15:17

**manowitz**  3:11
  10:14 15:22 17:11
  21:6 22:10 42:5,8
  45:1,7 46:1,2 48:18
  54:1 56:1
**manowitz's**  47:21
**map**  55:18
**march**  12:14 13:21
**mark**  3:11 17:11
**match**  6:17
**matched**  60:6
**matter**  18:6 24:13
  40:4 50:24
**matters**  19:23
**mb**  1:4
**mean**  5:4 7:19
  19:24 20:12 25:10
  35:13,18 40:6
  56:11,21
**meaning**  30:21
**means**  47:22
**meet**  5:23 14:21
**memo**  58:9
**memorandums**  6:9
**memos**  3:17 58:12
  58:13,14 59:20
**merely**  57:25
**merit**  58:2
**merits**  18:3 40:5
  47:4 59:10
**miami**  45:17
**miles**  11:7 15:25
**mind**  58:23
**minimizing**  5:15
**misclassified**  26:25
**misclassify**  36:14
**misnomer**  22:11
**missed**  31:10
**misstated**  58:13
**mom**  45:23

**money**  10:14,15
  24:13,22
**month**  15:19 16:5
  49:19 59:5
**months**  31:21
**moot**  14:17 33:16
  43:19,21
**mother**  29:7
**motion**  4:16 5:17
  5:19,20 6:14,21,22
  6:25 7:11 8:21
  12:18,19 13:11,21
  14:11,14,17,18,24
  14:25 18:5,9 19:18
  28:9,14,15 29:12
  29:24 30:11 31:12
  31:17 32:2,3,16,17
  33:4,23 34:4 37:9
  37:10 38:11,12,15
  39:1,2 40:9 41:3,6
  43:20 47:21 54:6
  55:9,14,16 56:7
  57:16
**motions**  3:24 4:3,6
  5:22 6:8 14:22 18:2
  18:3,4,22,24 33:6
  33:20,25 37:7 38:7
  38:8 41:2 50:4
  57:22
**move**  17:14 34:1
  37:18 55:11 57:15
**moved**  9:10,12
  16:11 17:24,24
  36:1 50:15
**moving**  15:20 37:8
**mud**  7:10
**multiple**  6:5,5

**n**

**n**  3:1
**names**  10:23

**narrow**  20:3,5
**narrowed**  19:1
**necessarily**  55:19
**necessary**  13:18
**need**  3:24 7:18
  25:19 33:18,20
  42:24 54:4 57:3
  60:1
**neglect**  14:2,3,6
  28:24 30:22,24
  31:1 32:9 37:15
  54:14
**neighbor**  45:23
**never**  3:23 10:8,11
  10:13,14,24 11:16
  12:18,19 17:15
  23:22 26:21 27:1,3
  27:4 34:17 45:12
**new**  11:9
**newer**  45:11
**nod**  25:8
**non**  4:8,19 5:21
  6:12,13 12:20
  13:22 14:9,13,17
  18:5 19:20 27:16
  27:24 28:10 30:23
  31:17,23 32:2,4,18
  33:8 37:11 38:12
  38:16 40:16 41:7
  41:10 48:12 53:10
  54:13 56:7 57:9
**north**  1:19 18:25
  26:6
**notary**  1:24
**note**  55:6
**notebook**  6:16
**notice**  19:7 58:25
**notion**  21:5 45:6
  46:14
**november**  1:17
  12:6 61:19

[nucleus - proceed]                                                          Page 71

nucleus  22:5,7
null  24:3
number  8:5 10:18
    18:1,4 40:15 43:7
    44:25 47:7 59:10
numerous  10:20
nutt  1:15 3:3
nw  2:3

**o**

o  3:1
oath  10:16
objection  27:1,4,8
obligation  24:1,2,5
obtained  21:11
obviously  59:1
occurred  18:20
    23:6
office  3:12 42:3
    45:9,12,13 46:4
oh  26:24
okay  4:21 6:2 7:3
    9:21,22 50:14
    58:15 59:16
oldest  6:25
once  39:10,13 45:4
operates  10:20
operative  22:5,7
opinion  41:19
opportunity  56:24
opposed  40:23
opposing  36:11
    58:16
opposition  7:8
    45:15
optical  29:18
order  17:25 51:21
    51:21,24
organize  3:22 37:3
original  41:5
outside  9:24,25
    23:16

outstanding  3:25
outweighs  41:14
overlap  49:8,11
overlapping  47:24
overly  35:18
owes  24:12
owns  10:18

**p**

p  3:1
p.a.  2:8
p.m.  1:18,18 60:20
packaged  33:21
page  58:9
paid  9:23,24 10:13
    10:14 23:14 34:18
    34:20,23
palm  1:3,19,20
    6:20 29:13 46:3
    61:3
paper  57:4
papers  59:4
part  12:1 23:20
    60:5,7
parted  12:5
partial  4:5 5:17 6:4
    6:22,23 8:21 14:11
    14:18,24 33:24
    34:4 37:7
participate  35:21
particular  54:7,22
particularly  37:10
    45:15 46:3
parties  11:13,25
    12:5,7,10,11,11
    15:25 16:19 17:17
    17:18 18:22 22:7
    24:3,23 27:15
    32:14 47:24 50:2
    61:14,15
parts  37:8 48:24

party  19:17 45:2,2
payable  9:5
payment  34:23
pending  28:8,17
    31:3 38:17 41:17
    54:16
people  41:25 42:16
    42:17 45:7,9,11,13
    57:18
percent  42:23
    43:25
percentage  10:2
perform  24:4
performance  9:18
    22:25 23:3,6
performed  9:8 23:8
person  8:18 10:17
    11:13 22:12 46:20
    46:22 55:23
personal  15:6
    21:10 55:19
perspective  38:14
phillips  29:18
phone  3:4
phrase  16:12
piecemeal  40:7
pieces  9:14 55:4
pile  41:13
pilot's  11:22
place  1:19
plain  30:21
plaintiff  1:7 2:2
    4:17 7:21 8:3,4
    16:25 17:2,7,7,8
    36:4 46:15
plaintiff's  6:21
    8:21 48:22
plaintiffs  3:10 5:18
    12:15 37:6 57:21
plan  5:25 19:2

plane  42:21
playing  51:10
please  52:10
point  8:12 10:6
    14:23 17:13 24:14
    32:11 37:12,13
    47:2
points  6:5 7:11
    59:20,21,22
policies  53:5
policy  20:18 53:9
    53:11 60:9
position  9:19 18:1
    25:4 28:7,16,21,23
    31:2 32:5 34:15
    36:11 44:15
possession  43:23
possibly  52:18
power  19:24
preceding  11:17
prepared  10:7
    35:18
present  38:9
presiding  3:3
presumption  17:1
    17:3 43:6,7
presumptions
    44:21
prevent  52:12
prevents  52:14
price  10:2
primarily  51:18
principle  25:24
prior  9:15 17:13
probably  4:18
    48:15 58:22
problem  34:9
procedure  39:7
procedures  39:7
proceed  41:12
    54:22 55:1 58:6

[proceeding - reviewed]                                                    Page 72

proceeding  57:11
proceedings  18:17
  18:18 29:22 32:24
  60:19 61:8,10
process  13:13
  19:10,14,16,22
produced  21:16
proper  17:1 29:5
  29:10,24 30:10,11
  60:13
properly  29:6
  44:20
properties  23:16
property  9:6,14
  23:8,9,10,10,14,15
  24:17,23,25 34:17
  35:2,7 60:8
protect  40:9
protecting  53:4
protection  53:12
protections  53:6
protective  17:24
provide  53:24 57:1
provided  6:16
  29:17 36:16 41:25
public  1:24 53:8,10
purposes  59:8
pursuant  13:11
  19:10 30:5
purview  25:15
put  50:9
putting  16:16

**q**

quash  30:11
question  24:19,24
  24:25
quite  37:25 38:15
  39:5
quote  23:21 25:25

**r**

r  3:1
r.p.r.  61:6,22
raise  19:18 53:5
raised  28:1 32:24
  35:1
raises  14:2
raising  27:23
raton  15:4 29:15
  45:22
reach  57:25
read  4:3 7:19 35:17
reading  39:6
ready  59:17
real  8:16,16,17,18
  9:6 15:8,11 20:2
  24:7 25:6 26:4
really  20:12 22:10
  22:11 34:13 45:3
  50:19 54:4 56:25
ream  57:4
reason  40:13 43:19
  49:17
reasons  20:18
  41:12 43:7 52:22
recalculated  39:13
receive  11:3,3,22
received  10:24
  23:22
record  61:9
recover  35:11
referenced  50:5
referral  3:18
refiling  7:8
reflecting  29:25
regard  49:21
regardless  60:1
registered  43:11
registering  44:10
registration  45:5

regulated  26:7,9
relate  9:6
related  18:2
relates  57:10
relationship  11:20
  12:9 27:14,14 42:5
  53:1 58:5
relative  61:13,14
relevant  9:11 11:7
  42:4
relief  32:25
relying  31:19 32:5
remand  13:12
  28:15 30:14 32:19
  55:15
remanded  13:10,11
  13:16,19 29:11
  38:4 39:13,20
remands  29:20,21
  37:22
removal  13:12,17
  13:18 39:17
removed  12:17
  29:1 31:15
removing  40:23
rendered  23:6
renewed  7:7
rental  1:6 3:10 8:1
  10:10,11,13,25
  11:2,14 12:14
  15:21 17:10 21:6
  22:17,20 42:8 46:4
repackage  57:6
replied  8:7
reply  7:9
report  18:22 50:3
  51:14 61:8
reported  1:24
reports  51:24
representing  3:6
  9:25

requests  17:22,23
  32:16
required  41:8
requirements  35:5
requires  22:4 28:3
res  16:13 19:18
  21:21 48:4 51:5
reset  33:5
residences  11:10
residency  60:10
resident  9:13 15:3
  55:22
residents  26:13
resolution  12:10
  38:6
resolve  12:11 40:7
  54:12
resolved  3:25 5:14
  5:15 18:23 33:11
  58:3
resource  51:7
resources  58:1
respect  5:23 15:12
  16:10 21:18 23:21
  29:22 45:6,16 50:4
respond  20:9 49:1
responded  16:10
  17:18
response  30:1,4
  44:25 58:13
responses  17:19
  18:10 44:24
restaurant  45:17
result  38:5 42:22
  58:1
retroactive  26:24
return  50:10
returns  10:7,16
  47:2
reviewed  38:20

**revisit**  59:6
**rhyme**  49:16
**rick**  1:24 61:6,22
**right**  3:7 4:7,11 6:5
  6:7,11,15,15 7:10
  7:23 11:12,24 12:7
  23:10 28:12,20
  29:15 31:13 32:10
  34:5,6,20 35:6,9
  36:3,5,8,18 37:3
  43:8 44:1 46:8
  48:15 53:2,23
**rights**  53:5
**rise**  3:2
**rosenberg**  13:14,16
**row**  15:5
**rule**  13:22 14:14
  16:24,24,25 19:8
  29:23,24 30:16,16
  30:21 31:10,17,20
  31:24 32:2,4 33:25
  37:10,20,21 38:20
  39:1 40:13 42:11
  44:8 56:10
**ruled**  29:8 51:15,15
**rules**  50:4 51:16
**ruling**  20:14 39:10
  47:18,19,20 49:24
  50:7 54:11 56:9
**rulings**  37:4 48:1,3
  48:4,5
**running**  28:21 31:5

**s**

**s**  2:8 3:1
**s.u.**  30:18
**salary**  10:3,3
**sale**  23:9 35:2 60:8
  60:8
**sales**  8:18 10:2
**saw**  11:18 20:13
  22:13 45:23,23,23

**saying**  19:16 31:1
  34:6 51:14
**says**  13:1,23 14:4
  16:25 22:19 26:12
  27:17 30:20 48:8
  51:4
**scenario**  51:14
**scenarios**  30:14
**scheduling**  59:8,12
**scope**  19:1 60:1,2
**scott**  2:8 3:14
**scottwagnerlaw.c...**
  2:10
**second**  17:12
**section**  26:9 45:24
**security**  11:4
**see**  7:22 27:22
  34:13 35:4,18
  36:22 38:2,13
  41:13 47:2,2
**seen**  14:20 26:2,15
  26:16
**selected**  21:8
**self**  10:17 11:13
  46:21 47:1 53:16
  55:23
**send**  16:1 59:9
**sense**  4:2,18 33:9
  33:10,13 48:15,17
  48:23
**sensitivity**  20:13
**sent**  45:22
**separately**  58:7
**september**  36:9
  43:13,18 44:22
**serious**  56:4
**serve**  19:8
**served**  17:14,22
  21:12 29:6,13
  31:14 32:16 33:3

**service**  13:13,14,20
  19:13,14,16 28:4
  29:5,7,11,25 30:10
  30:11,12,13
**services**  30:19
**serving**  19:7
**session**  3:3
**set**  20:21 58:17
  59:14
**sets**  17:18
**settle**  4:20
**seven**  12:21 15:16
  15:17 16:5,7 51:4
**sexual**  15:23 20:6
  27:2 41:17 42:10
  42:12,19,24 45:16
  52:12,14
**shape**  46:15
**share**  29:19
**shorter**  58:11
**show**  12:2 14:3
  18:14
**showing**  37:14
**shown**  37:15
**shows**  53:24
**side**  60:9
**sides**  9:18
**signal**  14:21
**signature**  61:22
**signed**  9:9,15 22:15
  25:8
**significantly**  17:5
**similar**  42:11,12
  44:8 53:6
**simple**  37:9
**simultaneously**
  55:1
**single**  42:2
**sir**  57:14
**sit**  3:18

**situation**  47:25
**situations**  42:13
  48:5
**six**  28:11,12,13
  39:19
**size**  20:1
**sliced**  49:3
**slinker**  3:12
**smarter**  54:20
**social**  11:4
**sole**  34:16
**somebody**  36:24
**sophisticated**  46:20
**sorry**  57:18 60:13
**sort**  43:14 48:3
**sought**  32:25
**south**  46:3
**southern**  12:17
**special**  58:17
**specific**  20:12 51:7
**specifically**  47:1
  50:1
**spend**  5:9 33:19
**splitting**  50:25 51:6
  55:5 60:12
**squarely**  34:24
**stab**  40:24
**stand**  3:18,19 27:16
**standing**  43:24
**start**  4:18 5:11
**started**  8:9 36:7,8
  38:6
**starters**  22:3
**starting**  46:24
**state**  6:10 7:4,8,9
  11:3 19:4,4,9 21:17
  24:10 25:1 26:5
  28:15 31:6 38:4,10
  38:11,17,18,21
  39:15 41:24 43:9
  43:11,12 50:13,18

50:24 56:12,16
   61:1
**state's**   23:5 25:25
**stated**   20:21 50:12
**states**   8:5 26:18
   44:7,8,9,10,11,11
   50:23
**stating**   51:18
**stationed**   24:20
**statute**   26:9,10,14
   27:21 28:3,4,17,20
   28:21 49:15,18
   52:11,13
**statutes**   52:17
**statutory**   53:6
**stay**   17:24
**stayed**   28:17,19
   53:13
**steam**   37:19 40:18
**steeped**   5:10
**stenographically**
   61:8
**step**   37:6,6
**steps**   56:15
**stick**   14:11
**stop**   12:8 25:7
**strategies**   37:25
**strategy**   38:13
**street**   2:3
**strictly**   57:25
**stronger**   20:18
   60:9
**studied**   11:23
**stuff**   3:20,21 4:1
   6:8 22:10 27:12
**subject**   15:25 35:23
**submit**   50:2 55:24
**submitted**   45:7
**subpoena**   19:8,9,24
   21:11

**subpoenas**   5:24
   18:25 21:18
**subsection**   16:8
**subsequent**   15:15
**subsequently**   30:3
**substantial**   8:6
   11:21 27:5 46:2
**substantially**   16:15
   16:16
**substantive**   18:8
   27:4 38:7,8
**sudden**   46:16
**sue**   53:2
**suggest**   37:6
**suggestion**   33:22
**suggestions**   4:15
**suing**   34:19
**suite**   2:3,8
**summary**   4:5,17
   5:5,17 6:4,22,23
   7:16,24 8:21 12:19
   12:19 14:12,14,18
   14:24 33:24 37:7
   59:20
**superior**   15:22
**support**   30:19
**supposed**   39:2,3
**supreme**   16:13
**sure**   17:6 22:20
   33:11,14,15 37:1
   48:22
**surely**   47:23 48:20
**surface**   27:11
**sword**   57:23
**systems**   50:21

**t**

**tabs**   6:17,20
**tackle**   6:4
**tactical**   30:19
   37:18,25

**take**   3:8 5:5,12
   7:14 11:21 40:24
   46:7 57:6,24
**taken**   1:17 17:20
   17:21 18:7 54:8,9
**talk**   41:23 48:12
   59:10
**talking**   46:9 56:22
**tax**   10:7,16 11:4,4
   47:2
**taxes**   10:24
**technical**   3:20
**technically**   44:18
**telephone**   2:13
**telephonic**   58:23
**telephonically**
   49:23
**telling**   21:22
**ten**   11:19
**tentative**   47:18,19
   47:20 49:24 51:20
**term**   11:15 20:11
**terms**   3:21 14:25
   41:24 56:22
**test**   41:11
**testify**   42:18,24
   46:17,19
**testimony**   29:4
   42:13
**texas**   26:12,13,13
**thank**   59:18 60:15
   60:16
**thanksgiving**   60:17
**thing**   4:2 5:16
   30:12 43:2
**things**   5:15 47:11
   51:17 59:12
**think**   4:12,16,17
   5:4 19:22,23 27:17
   27:21 31:22 33:16
   35:20 37:8 40:15

41:9 42:4 43:1,14
   43:15,21 47:4,11
   51:2 53:17 54:8,15
   54:19 56:10 57:3
   58:2,4,12
**third**   24:22
**thought**   24:19 39:5
   39:11
**thoughts**   20:20
**three**   4:3 11:17
   21:2 45:8 46:10
   57:18 58:9,24
**threshold**   14:21
   27:20 52:4
**time**   1:18 5:8 7:14
   8:12,15 11:21,21
   11:22 14:25 22:4
   28:16 30:10 31:20
   34:7 38:24 39:24
   40:21 41:6 49:4
   54:4 55:9,10 57:20
   58:1,18 59:23
   60:15,16
**timeliness**   54:19
**timely**   28:22,23
   40:3,4
**times**   11:6,19
**timing**   4:22 27:19
   27:20 28:6 40:8
**tinyhomeproperti...**
   10:22
**tinyhouseproperti...**
   10:22
**title**   51:4
**today**   3:11 4:3 5:23
   6:1 7:15 18:2 56:10
   60:14
**told**   46:24 56:3
**tolling**   28:19 39:23
   54:17,18

**[total - yaboa]**

**total**  11:19,19
**touch**  27:11
**touching**  14:22
**track**  11:11
**transaction**  15:8
  26:6 54:9
**transactions**  9:23
  9:25 15:12
**transcript**  50:8
  57:25 61:9
**transfer**  17:14
  50:13,15 55:3
  56:19
**transferred**  54:24
**transferring**  56:13
**translates**  27:24
**traveling**  48:17
**trial**  30:21 33:7
  42:19 58:24
**trials**  48:7,23
**tried**  4:1
**true**  31:8 47:8 61:9
**try**  35:17 40:24
**trying**  6:15 32:22
  33:10 34:22 35:1
  35:22 41:1 51:22
  57:6 59:3
**turns**  45:18
**two**  4:6 5:19 9:14
  15:4,11 17:19
  18:21 27:15,15
  38:7,8 44:24 48:7
  48:23,24,24 49:9
  49:17 50:20 58:5,9
  58:12,24
**typically**  13:18

**u**

**u.s.**  6:19 12:17
**ultimately**  7:20
**unclear**  44:3

**underlying**  10:3
**understand**  7:19
  27:14 58:20
**understanding**
  32:1 41:10 51:19
  58:5
**undisputed**  9:13
**undisputedly**  15:3
**unenforceable**
  24:14,17
**unfortunately**  5:9
  54:4
**uniform**  19:11
  21:15 30:15 46:13
**uniformly**  16:16
**universe**  20:5
**unlicensed**  23:24
  24:9,20 26:17,19
**unpaid**  8:8
**unquote**  23:21
**untimely**  13:12,17
  18:6,7 54:13
**use**  3:20 37:21
  56:18,21
**usually**  5:9

**v**

**valid**  13:15
**venue**  40:16
**versus**  29:18 30:19
  34:3 41:12
**victim**  42:10
**view**  41:18 42:23
  43:17 44:14
**viewed**  39:4
**void**  24:3,14,16
**vs**  1:8
**vysata**  1:9 3:6,16
  8:7,9 9:10,12,22
  10:1,9,12,13,14,15
  10:18,20,23 11:5
  11:15,16,18,20,23

12:3,16,21 13:3
  15:2,7,13,19 17:12
  17:14,22 21:4,10
  22:24 23:14 24:13
  26:20,21 29:5
  34:17 42:6 45:10
  45:12 46:12,16,19
  46:24 48:14,16
  52:15 53:12 55:20
**vysata's**  8:11 10:7
  13:19 15:16 24:9
  45:22

**w**

**w**  10:24 11:3
**wage**  23:21
**wages**  23:22
**wagner**  2:8
**wait**  38:5 50:2
  51:16
**waiting**  38:2 57:18
**waive**  33:1
**walker**  3:15
**walks**  8:23
**want**  5:12 14:20
  27:7 37:20 47:12
  50:2 51:12,13 54:3
  54:16 57:20 60:11
**wanted**  38:5,9 40:7
  53:12
**wanting**  12:3,4
**wants**  42:3 46:16
  51:11
**warrants**  35:8
**washington**  2:4
**way**  4:12 7:22 9:22
  13:17,19 14:20
  33:20 35:4 36:24
  38:20 39:3,4 42:23
  43:15 46:14,20
  51:22

**ways**  12:5
**weakened**  17:5
**web**  10:20
**websites**  10:21
**weeks**  18:21 58:24
**weigh**  56:13
**weight**  46:6
**weird**  20:1
**went**  4:1 12:12
  32:24 40:18 47:12
  56:12
**west**  1:20 6:20 21:2
  21:3 46:10,10
**whatsoever**  8:25
**white**  1:24 61:6,22
**wish**  54:5
**withdraw**  34:7
**withhold**  11:4
**witness**  20:7 45:25
  46:15
**witnesses**  11:18
  12:15 19:5,22 20:5
  20:22 41:22,23
  42:23 45:14,19
  47:7,9,10
**woman**  42:7
**work**  45:10 57:7
  58:16
**working**  7:20 12:8
  36:8
**works**  53:19
**written**  16:1 36:2
**wrong**  40:15

**x**

**x**  1:11
**xxxx**  1:4

**y**

**yaboa**  10:7,8 41:25
  46:14,17,18

[yaboa's - zack]                                                                Page 76

| |
|---|
| **yaboa's**  46:23 |
| **yeah**  5:4 19:12,21 |
| 19:25 22:13 25:7 |
| 34:19 35:8 57:18 |
| 59:15,24 |
| **year**  10:8,15 |
| **years**  11:6,17 15:4 |
| 22:8 |
| **york**  11:9 |
| **z** |
| **zack**  3:12 |